## State *v.* Ferguson.

By the provisions of the charter of the city of Concord, power is conferred upon the city council to make and establish ordinances and by-laws for numerous purposes, specifically set forth in the charter, among which are ordinances and by-laws " to prohibit the selling or giving away any ardent spirits by any store-keeper, trader or grocer, to be drunk, except by inn-keepers duly licensed ;" and " to forbid the selling or giving away of ardent spirits, or other intoxicating liquors, to any child, apprentice or servant, without the consent of his parent, master or guardian, or to any Indian ;" and this specific enumeration is followed by a provision in the charter that the city council " may make any other by-laws and regulations which may seem for the well-being of the city, provided they be not repugnant to the constitution or laws of the State." *Held,* that the power of the city council to pass ordinances on the subject of the sale of ardent spirits or other intoxicating liquors, is limited to the cases described in the specific provisions ; that the general provision is to be construed as referring to other matters, properly the subjects of police regulation than those specifically enumerated ; and that, consequently, an ordinance prohibiting the sale of intoxicating liquors to any person without a license from the mayor and aldermen, was unauthorized by the charter, and void.

THIS case is submitted upon the following agreed statement of facts :

The respondent was convicted and sentenced to pay a fine of five dollars and costs, by the police court of the city of Concord, on the fourth day of September, 1854, upon a complaint that the respondent, at the city of Concord, on the second day of September, 1854, not being then and there licensed to sell intoxicating liquors within the city of Concord, did then and there sell one glass of intoxicating liquor to one Edwin N. Fogg, contrary to the form of an ordinance of said city of Concord, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.

The city ordinance under which the complaint was made and the conviction had, was as follows :

" AN ORDINANCE relating to the sale of intoxicating liquors.

" *Be it ordained by the City Council of the City of Concord, as follows :*

" SECTION 1. No person shall sell any intoxicating liquors within the city of Concord, until a license therefor shall have been obtained of the mayor and aldermen of said city.

" SEC. 2. If any person, not being licensed, shall sell any intoxicating liquor, mixed or otherwise, in any quantity, he shall be punished by fine not less than five dollars nor more than ten dollars. And it shall be the duty of the city marshal, and all other police officers, to see that the provisions of this ordinance are observed, or their violations punished to the extent of the law.

" SEC. 3. The term intoxicating liquor contained in this ordinance shall not be construed to refer to or include wine or spirituous liquors, as mentioned in chapter 846 of the Pamphlet Laws of this State, nor vinegar, when sold in any quantity, nor cider, when sold in quantities of more than two gallons at any one time."

Upon the trial it was proved that the respondent, on the day alleged in the complaint, sold to the witness, Edwin N. Fogg, one glass of strong beer, and received payment therefor. It was admitted that the respondent had no license ; but it was contended that the city government had no authority, under the

---
State *v.* Ferguson.
---

city charter, or otherwise, to pass the ordinance for the violation of which the complaint was brought.

The court found the respondent guilty, and imposed a fine of five dollars and costs, from which decision the respondent appealed..

*George*, Solicitor, and *Foster*, for the State.

The legal and constitutional power of the city of Concord to pass and enforce ordinances authorized by their charter, was fully settled and determined in *The State* v. *Clark*, 8 Foster 176.

The only question, therefore, would seem to be — Does the charter authorize the passage of ordinances relative to the sale of intoxicating liquors ?

The city charter, after providing that the city council may pass ordinances upon a variety of subjects, confers upon the city council additional power, in the following words : " And may make any other by-laws and regulations which may seem for the well being of said city, provided they be not repugnant to the constitution or laws of New-Hampshire ; which by-laws shall take effect and be in force from the time therein limited, without the sanction or confirmation of any other authority whatever."

Under similar clauses in city charters, ordinances have been held valid in *Wadleigh* v. *Gilman*, 3 Fairfield 403 ; *Heisembrittle* v. *City Council*, 2 McMullen 233, and other cases, cited in *State* v. *Clark*, before referred to, which would seem to be directly in point.

*Peabody*, for the respondent.

1. The city council of Concord had not the authority, under the city charter, to pass the ordinance in question. It is contended that they could do so (and they must, if at all) under the clause in the charter authorizing them to " make any other by-laws and regulations which may seem for the well being of the city," &c. But the case of *Com.* v. *Turner*, 1 Cush. 493, is directly in point, and settles the question that they have

no such authority. So *Collins* v. *Hatch*, 18 Ohio 523 ; U. S. D. 1850, p. 88, sec. 6.

2. When power is given to a city council to make by-laws on a certain subject, they must follow strictly the authority given them ; and though a subsequent clause give them authority to " make any other by-laws for the well being of the city," this sweeping clause cannot enlarge their power previously conferred, and *limited*, in relation to a specific subject. And all the power they have is conferred specifically in paragraphs four and five, page 358, Pamphlet Laws, 1849.

3. The legislature have taken such action on the subject of intoxicating and spirituous liquors as in their wisdom they deemed best, (Comp. Laws, chap. 123,) and no town or city, unless specially and particularly authorized, can go beyond the action taken by the legislature on that subject. If towns and cities could do so, we might have the " Maine liquor law" adopted by one town, and unlimited tippling authorized in another.

SAWYER, J. By the provisions of section 17 of the act " to establish the city of Concord," passed July 6, 1849, power is given to the city council to make and establish ordinances and by-laws for numerous purposes, specifically set forth, and embracing a great variety of subjects. Among them are the following, namely, " to prohibit the selling or giving away any ardent spirits by any store-keeper, trader or grocer, to be drunk, &c. except by inn-keepers duly licensed," and " to forbid the selling or giving away of ardent spirits, or *other intoxicating* liquors, to any child, apprentice or servant, without the consent of his parent, master or guardian, or to any Indian." Following this specific enumeration of the particular purposes for which such ordinances and by-laws may be established, is a provision that the council " may make any other by-laws and regulations which may seem for the well being of the city, provided they be not repugnant to the constitution or laws of the State."

The ordinance in question goes beyond the authority conferred by either of these special provisions. The power conferred by

them upon the city council is limited to the making of by-laws and ordinances to forbid the selling or giving away of ardent spirits, or other intoxicating liquors, in the particular cases and under the circumstances therein specified, namely, the sale of ardent spirits by any store-keeper, trader or grocer, to be drunk, and of ardent spirits or any other intoxicating liquors, *to* Indians, or children, &c., without the consent of their parents. The ordinance undertakes to prohibit the sale of intoxicating liquors, except such as are mentioned in the Pamph. Laws, chap. 846, act of July 6, 1849 ; that is to say, except wines and spirituous liquors, and cider, in greater quantities than two gallons, under totally different circumstances from those contemplated in these provisions of the charter. It in fact extends the prohibition as to those intoxicating liquors to every case of sale *to* any person, and *for* any purpose, and *by* any person not licensed by the mayor and aldermen. The charter, in these provisions, authorizes an ordinance or by-law to prohibit the sale of " ardent spirits," under that designation probably, not including wines, beer and malt-liquors, by a store-keeper, &c., to be drunk ; and of " ardent spirits and *other intoxicating liquors ;*" thus probably intending to include the other liquors mentioned,—to Indians, children, &c. The reasons for this distinction are obvious. While the legislature might deem it expedient to clothe the city council with power to prohibit the sale by any store-keeper, &c., of ardent spirits, understood as synonymous with spirituous liquors, the product of distillation, and comprising the most injurious forms of intoxicating drinks, it might at the same time be deemed sound policy to extend the power of prohibition in the case of sales to children, apprentices, &c., to embrace all other intoxicating liquors also, which, though perhaps less hurtful in their character, are nevertheless considered by many to be so pernicious in their effects, especially in reference to the habits which their use by the young is so likely to engender, as to warrant the prohibition of their sale to persons unfitted, by reason of their tender years, or want of moral culture, to exercise, in their use, a proper degree of self control.

The ordinance overrides all distinctions of this nature ; or, rather, it reverses the distinctions established in these provisions of the charter ; for it declares that wines and spirituous liquors, and cider in quantities more than two gallons, shall not be deemed intoxicating liquors ; while beer, and ale, and cider, in smaller quantities, may ; and it prohibits the sale of intoxicating liquors thus defined, to any person unless sold under license from the mayor and aldermen, and authorizes, or rather leaves unforbidden, the sale by one holding such license, even to Indians, children, &c., no less than to others.

The ordinance then is not established by virtue of any authority derived from these special provisions of the charter ; and if such authority is to be found in the charter, it must be contained in the general provision that the city council may make any other by-laws and regulations which may seem for the well-being of the city, provided they be not repugnant to the constitution or laws of the State.

Assuming that the ordinance is but a new municipal regulation, upon a subject fairly within the scope of the general powers incident to such *quasi* corporations—partaking only of the character of a by-law for the government of the internal and local affairs of the municipality, and not usurping the place of general legislation ; and assuming, also, that it is not repugnant to the general law of the State on the subject of the unlicensed sale of wines and spirituous liquors — upon both which points a serious doubt may well be entertained — the broad and comprehensive terms of the general provision are undoubtedly sufficient, if it be construed by itself, independent of the other provisions of the charter, to carry the power claimed.

But this statute, like all other legislative acts, is to be so construed that all its parts shall stand, if this may be done. For that purpose the meaning of each of its provisions is to be gathered by reading it in connection with all others, and thus construing it in the light of its context. The maxim, *ut res magis valeat quam pereat,* applicable no less to statutes than to wills and other instruments of a private character, can be satisfied only by so construing it.

If this general provision confers the power to enact the ordinance, it is clear that the clauses which expressly give the power to regulate sales by store-keepers, &c., and *to* Indians and children, are unmeaning and useless ; for if the general clause authorizes this ordinance, then it equally authorizes one in the precise terms of either or both of those special clauses to regulate such sales. To enact the latter is no greater exercise of power than the former ; indeed, it would be a power of the same nature and exercised in the same direction, though narrowed in its operation. To hold, then, that the general clause confers the power, is in effect to expunge these special provisions from the charter ; and not these only, but all the numerous clauses which go to limit and define the precise boundaries of the power to be exercised by the city in the various cases specified for the enacting of by-laws and ordinances.

Besides, the grant by the legislature to the city of the power to enact a by-law to prohibit the sale of spirituous and other intoxicating liquors, *by* or *to* certain persons designated, or *for* certain purposes specified, is by implication, as a general principle, a denial of the power to prohibit sales by or to other persons, or for other purposes. *Expressio unius est exclusio alterius.* That this is but the general rule, and as such admits of exceptions, is undoubtedly true ; and it must be considered as an exception, when, upon a view of the entire act, in all its provisions, it is manifestly the intention of the legislature that the implication shall not arise. But in this case it cannot be gathered from the act that such was their intention.

The power to make by-laws, when not expressly given, is implied as incident to the very existence of a corporation, but in the case of an express grant of the power to enact by-laws limited to certain specified cases and for certain purposes, the corporate power of legislation is confined to the objects specified ; all others being excluded by implication. 2 Kyd on Corp. 102 ; Ang. & Am. on Corp. 177. In *Child* v. *Hudson's Bay Co.*, 2 P. Wms. 207, it is laid down that a " corporation has an implied power to make by-laws ; but when the charter gives the corpo-

State *v.* Ferguson.

ration power to make by-laws, they can only make them in such cases as they are enabled to do by the charter, for such power given by the charter implies a negative that they shall not make by-laws in other cases."

The express grant, then, of the power of legislation upon a particular subject, limited by the terms of the grant in respect to its extent or objects and purposes, or in reference to the mode in which it is to be exercised, may be held, unless the contrary manifestly appears to be the intention of the legislature upon a view of the entire act, to exclude all authority to legislate upon that subject beyond the prescribed limits; and, in the absence of any further authority expressly granted, upon every other subject. There is nothing in the act to indicate a contrary intention in this case. On the other hand, the precise and carefully defined limitations upon the power conferred to legislate upon the various subjects contained in the special clauses of the act, would seem clearly to indicate that the legislature intended thereby studiously to guard against the exercise of the power by the city beyond the limitations so prescribed. Why were these precise and cautiously-worded limitations introduced? It is not a satisfactory answer to say that they might be swept away as unmeaning and useless by the next clause in the act; the general clause conferring the power to legislate in all cases. If the general clause had been wanting in the charter, it would seem that no power would have existed in the city to enact ordinances or by-laws upon any subject, or in relation to any matter, not embraced in the catalogue of cases specified in the special clauses as the subjects of legislation. That doctrine is well settled upon the authorities, and may well be sustained upon principle. It must be understood that the intention in the insertion of the general clause was to remove the implication which would otherwise arise to restrain the city from enacting by-laws upon other subjects, and thus to empower them, by virtue of the special provisions conferring express power in the specified cases, to legislate upon those subjects under the limitations prescribed, and, by virtue of the general clause, upon all other matters coming within

the scope of their municipal authority, subject only to such limitations as the general laws may prescribe.

These views do not conflict with any of the authorities cited in support of the prosecution. In *State* v. *Clark*, 8 Foster 176, the question was whether an ordinance of the city of Concord, passed under the authority of the charter, was valid, which prohibited the keeping of intoxicating liquors in any refreshment saloon, or *restaurant*. There was no pretence, in that case, of an implied limitation upon the legislative power of the city *on this subject*, by a special grant of power to make by-laws upon the subject of keeping intoxicating liquors in particular places, and the ordinance was held valid, under the general clause, as being a matter properly pertaining to the police of the city, such that a due regard to public policy and morals might require that such liquors should not be kept in those places. In that case the court commented upon *Heisembrittle* v. *Charleston*, 2 McMullen 233 ; also cited in the argument, and pronounced it to bear a very strong resemblance to the case then under consideration. The only question in the case last cited was whether an ordinance of the city prohibiting shop-keepers, unless licensed, from keeping spirituous liquors in their shops, or in any adjoining room, was authorized by a provision of the city charter vesting power in the city to pass " every by-law or regulation that shall appear to them requisite for the security, welfare and convenience of the city, or for preserving peace, order and good government therein." This comprehensive provision was in no way qualified or limited in reference to the subject matter of the ordinance by any other provision of the charter.

The case of *Wadleigh* v. *Gilman*, 3 Fairfield 403, also cited in the argument, is of the same character. That was an action of trespass against two of the city officers of the city of Bangor, for breaking and entering the close of the plaintiff, and removing a building standing thereon. The defendants justified under an ordinance of the city government, prohibiting the erection of wooden buildings within certain limits. The city charter conferred authority upon the city government to ordain and establish

such laws and regulations, not inconsistent with the laws of the State, as should be needful for the good order of the city. As in the case of the Charleston ordinance, this broad provision was not limited, expressly or impliedly, by any other provision contained in the charter.

The conclusions then to which the court have arrived are, that the authority of the city council of Concord to enact by-laws and ordinances on the subject of the sale of spirituous and other intoxicating liquors, is defined and limited by the special provisions of the charter conferring power in relation to that matter, and to be exercised only in the cases and to the extent therein specified; and that the general clause conferring power to make any other by-laws and regulations was not intended to enlarge or extend the power conferred by the special provisions in relation to their various subject matters, but to give the power to make by-laws in relation to such other matters as may properly be the subjects of police regulation, and as are not expressly declared to be the subjects of municipal legislation by other provisions of the charter. Upon these views the ordinance cannot be sustained, and there must be an order to the court of common pleas that

*The complaint be quashed.*