JOHN J. DENNIS II, ET AL. *v.* THE MAYOR
AND CITY COUNCIL OF ROCKVILLE

[No. 4, September Term, 1979.]

*Decided October 8, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Patrick Casey Duncan,* with whom were *B. George Ballman, James M. Griffin* and *Staley, Prescott & Ballman, P.A.* on the brief, for appellants.

*Sondra Harans Block, Assistant City Attorney,* and *Roger W. Titus, City Attorney,* for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

In 1976, the City Council of Rockville enacted an ordinance, presently codified as § 12-1.18A of the Laws of Rockville, designed to provide prospective purchasers of real property with information concerning zoning, planned land uses, roads, proposed parks, and other public facilities affecting the property. Section 12-1.18A imposed a duty upon the property owner's agent, or upon the property owner should an agent not be employed, to provide a prospective purchaser of realty with the opportunity to examine the Master Plan prior to entering into a contract of sale. This could be done by either (1) producing and making available for examination a copy of the Plan or (2) escorting the purchaser to a place where the Plan was available for inspection and obtaining the Plan for the purchaser's inspection. Section 12-1.18A further provided that, in the event its provisions were violated, the purchaser would have the right to terminate the contract of sale at any time prior to the conveyance of the property. The issue presented on this appeal is whether the City of Rockville had the authority to enact that part of § 12-1.18A providing that the purchaser shall have the right to terminate the contract upon a failure of the agent or the owner to comply with the duty imposed upon them. For the reasons set forth below, we hold that the City of Rockville had such authority.

The plaintiffs, John J. Dennis II and Robert S. Montgomery, real estate agents engaged in selling real estate in Rockville, and Waddell S. Taylor, a resident of Rockville, filed a bill in equity in the Circuit Court for Montgomery County. The plaintiffs, raising several arguments challenging the authority of the City of Rockville to enact any part of the ordinance, sought a declaratory judgment that § 12-1.18A was invalid as a whole and an injunction against the enforcement of the ordinance. In a decree filed October 4, 1978, the trial court (Frosh, J.) declared that § 12-1.18A was valid and constitutional in all respects. After the plaintiffs filed an appeal to the Court of Special Appeals, we issued a writ of certiorari prior to a decision by that court.

In this Court, the plaintiffs concede that the City has the authority to regulate the sale of real property by enacting that part of § 12-1.18A imposing a duty upon the seller or his agent to provide the purchaser with the opportunity to examine the Master Plan. The only issue raised by the plaintiffs on this appeal, and thus the only issue decided by us, is whether the City, in order to *enforce* the ordinance, has the authority to authorize the purchaser to terminate the contract of sale in the event of a violation.

The plaintiffs contend that the provision permitting the purchaser to terminate the contract creates a "forfeiture" of their contractual rights which may not be done by a municipality without express authority. In support of this contention, the plaintiffs cite the rule set forth in I J.Dillon, *Municipal Corporations* § 237 (5th ed. 1911), that

> "*a municipal corporation possesses and can exercise the following powers, and no others:* First, those granted in *express words;* second, those *necessarily or fairly implied* in or *incident* to the powers expressly granted; third, those *essential* to the accomplishment of the declared objects and purposes of the corporation, — not simply convenient, but indispensable." [1]

---

[1] This Court has frequently recognized the so-called "Dillon Rule" in connection with the authority of municipal corporations. *See, e.g.,* Bowie Inn

Moreover, the plaintiffs assert that this principle is especially applicable to forfeitures, relying primarily upon *Rossberg v. State,* 111 Md. 394, 74 A. 581 (1909). The plaintiffs point out that neither the Rockville City Charter nor Maryland Code (1957, 1973 Repl. Vol., 1978 Cum. Supp.), Art. 23A, contains express authorization to enact a forfeiture. They further point out that the charter and code provisions directly relating to the enforcement of municipal ordinances provide only for the imposition of fines and imprisonment.[2] Therefore, they argue that because the power to create a forfeiture was not expressly or by necessary implication granted to the City, under *Rossberg v. State, supra,* the City lacked the authority to declare contracts terminable at the purchaser's option.

In *Rossberg,* a Baltimore City ordinance prohibited the sale, furnishing or possession of cocaine. The ordinance provided a penalty of a fine and imprisonment, and in the event the offender was a licensed pharmacist or physician, the forfeiture of his license. At the time of the enactment of the Baltimore City ordinance, there was also in effect a state law prohibiting the sale and furnishing (but not the simple possession) of cocaine and prescribing a penalty of a fine and imprisonment (but not a forfeiture of the license of a convicted pharmacist or physician). Dr. Rossberg, a licensed pharmacist, was convicted for the sale of cocaine in violation of the Baltimore City ordinance. This Court first upheld the validity of those parts of the local ordinance that provided for a fine and imprisonment of a different amount than the state statute. The Court then addressed the license-forfeiture

---

v. City of Bowie, 274 Md. 230, 247, 335 A.2d 679 (1975); McRobie v. Town of Westernport, 260 Md. 464, 466, 272 A.2d 655 (1971); Rushe v. Hyattsville, 116 Md. 122, 81 A. 278 (1911).

2. Code (1957, 1973 Repl. Vol., 1978 Cum. Supp.), Art. 23A, § 3(a), provides in pertinent part that the

> "legislative body of any municipality shall have power to provide that violations of ordinances and resolutions authorized by this article shall be punishable as misdemeanors, but no penalty shall exceed a fine of $500 and imprisonment for 90 days."

Article IV, § 3, of the Rockville charter, presently codified in 1972 Montgomery County Code (1977 Repl. Vol.), § 72-16, provides for fines of up to one hundred dollars and imprisonment not exceeding thirty days, or both.

issue. The trial court had held that the forfeiture provision was so oppressive that it was an unreasonable exercise of the police power, 111 Md. at 419, 74 A. at 585. This Court, however, after noting that forfeiture of the license might be the only fully adequate penalty, nevertheless held *(ibid.)*:

> "Our examination of the matter leads us to the conclusion that under its charter the City of Baltimore has no power to declare any forfeiture.
>
> "In a note to *Cooley's Constitutional Limitations,* page 249, 5th Ed., the author says: 'Municipal by-laws may impose penalties on parties guilty of a violation thereof, but they cannot impose forfeiture of *property or rights* without express legislative authority,' citing *State v. Ferguson,* 33 N.H. 424, and *Phillips v. Allen,* 41 Pa. St. 481. JUDGE DILLON states the law in the same way, in his work on *Municipal Corporations,* Vol. 1, sec. 336. And *McQuillan on Ordinances,* sec. 170, says the general rule is that an ordinance cannot create a forfeiture in the absence of express power so to do, citing *Kirk v. Nowell,* 1 Term. Rep. 118; and he adds in the same section: 'The American Courts have generally followed the early English rule, and have held that in the absence of express power given an ordinance cannot be enforced by forfeiture.' "

*See also Mayor and Aldermen of Mobile v. Yuille,* 3 Ala. 137, 144 (1841); *White v. Tallman,* 26 N.J.L. 67 (2 Dutcher) (1856); *Coonley v. City of Albany,* 132 N.Y. 145, 153, 30 N.E. 382 (1892); *Hart v. Mayor, &c. of Albany,* 9 Wend. 571, 588 (Ct. for Correction of Errors, N.Y., opinion of Sutherland, J.) (1832); *Phillips v. Allen,* 41 Pa. 481 (1862); *Heise v. Town Council,* 6 Rich. 404 (S.C. 1853); II J.Dillon, *supra,* §§ 611, 618; 5 E.McQuillin, *Municipal Corporations* § 17.08 (3d ed. 1969).

The above-quoted language from *Rossberg,* on which the plaintiffs here place much reliance, was set forth in a totally different context. *Rossberg* dealt with a license to generally engage in one's profession. It was treated by the Court as a property right, unlike many other types of licenses which are

not deemed to create property or contract rights.[3] The license involved in *Rossberg* was not granted by the City under a municipal ordinance but was issued by a state agency pursuant to a state statute, Code (1904), Art. 43, §§ 141-154. It was under these circumstances that the Court in *Rossberg* applied the principle that a municipal corporation may not enact a forfeiture absent express authority.

We need not in the instant case explore the extent to which this principle set forth in *Rossberg* might be equally applicable to "forfeitures" under dissimilar circumstances.[4] In our view, the challenged City of Rockville ordinance does not at all involve a "forfeiture" as that term was used in the *Rossberg* case. In the case at bar, the City is not attempting to infringe upon, alter or destroy any pre-existing property or contractual right. Section 12-1.18A did not authorize the City of Rockville to acquire the contract right of either party or the seller's profits from the sale or the parcel of real property involved. The ordinance did not revoke the real estate agent's license. If that were the case, the plaintiffs might have a stronger argument that a forfeiture had been created. Instead, § 12-1.18A simply attempted to require prospectively a mode of conduct and provide a sanction for the breach thereof by returning the parties to the status quo.

An ordinance, operating prospectively, providing for the rescission of a contract entered into after the enactment of the ordinance, is not a forfeiture. It has been frequently recognized by this Court that the laws subsisting at the time of the making of a contract enter into and form a part thereof as if expressly referred to or incorporated in its terms, and the principle embraces alike those provisions which affect the validity, construction, discharge and enforcement of the contract. *Beca v. City of Baltimore,* 279 Md. 177, 182, 367

---

**3.** *E.g.,* Robert T. Foley Co. v. W.S.S.C., 283 Md. 140, 153, 389 A.2d 350 (1978); Fell v. State, 42 Md. 71, 89 (1875).

**4.** This Court has previously recognized, both before and after *Rossberg,* the implied authority of a municipality to revoke a license or cause the destruction of harmful property as part of a valid regulatory scheme. *See* Schultz v. State, 112 Md. 211, 76 A. 592 (1910); Deems v. M. & C. C. of Balto., 80 Md. 164, 30 A. 648 (1894); Boehm & Loeber v. Mayor, &c., of Baltimore, 61 Md. 259 (1884).

A.2d 478 (1977); *Federal Ins. Co. v. Allstate Ins. Co.,* 275 Md. 460, 473-474, 341 A.2d 399 (1975); *Downing Dev. Corp. v. Brazelton,* 253 Md. 390, 252 A.2d 849 (1969); *Holmes v. Sharretts,* 228 Md. 358, 180 A.2d 302, 98 A.L.R.2d 363 (1962); *Whitworth, Adm'r v. Department,* 222 Md. 98, 158 A.2d 765 (1960).

For example, in *Denice v. Spotswood I. Quinby, Inc.,* 248 Md. 428, 237 A.2d 4 (1968), this Court held that a provision of the county building code became a substantive term of the sale contract, and that a breach of the code provision, if substantial, would permit the buyer to terminate the contract. *Accord, Griffith v. Scheungrab,* 219 Md. 27, 146 A.2d 864 (1959).

Similarly, in *Prince George's Club v. Carr,* 235 Md. 591, 202 A.2d 354 (1964), a corporation entered into a contract to sell its real property. Its real estate broker also signed the contract and agreed that his commission would come out of the settlement proceeds. At the time the contract was made, Code (1957), Art. 23, §§ 65, 66, required that the sale be approved by two-thirds of the shareholders. Because shareholder approval was not obtained, the sale was not consummated. After holding that consummation of the sale was a condition to the broker's entitlement to his commission, the Court stated (235 Md. at 607-608):

> "This Court, in various decisions over a long span of years, has cited and applied 'the general rule that subsisting laws enter into and form part of a contract as if expressly referred to or incorporated in its terms, and the rule embraces alike those provisions which affect its validity, construction, discharge, and enforcement.' . . .
>
> "The surrounding circumstances, including the limitation by reason of Code (1957), Art. 23, Secs. 65 and 66, that the Club could not make the sale that Mr. Coates, the vice-president of the broker, had arranged without the approval of two-thirds of its stockholders, make it appear to us that the condition of no commission without a settlement and payment

of the purchase price was applicable if the stockholders did not approve the sale.

"Mr. Coates was a realtor of twenty-six years experience. . . . We think he cannot have failed to know that the Club intended to sell substantially all of its assets, and that the stockholders were the persons who, as a group, had the final say when a chance to do so was presented, (he himself had told the second stockholders meeting he attended that one of the terms of the contract he proposed was the deposit was subject to 'ratification of agreement') and that he was chargeable with knowledge that two-thirds of the stockholders must approve if such a sale were to go through. Under these circumstances, when Edw. R. Carr, Inc., by Mr. Coates, signed the contract which embodied the condition that its commission was to be paid at settlement and from the purchase price then payable, *it agreed that it would get no commission unless the stockholders of the Club approved the sale as effectively as if that proviso had been written in the contract in so many words. . . .*" (Emphasis supplied.)

Accordingly, this Court concluded that the broker was not entitled to his commission.

Applying these principles to the case at bar, it is apparent that at the time a contract subject to § 12-1.18A would be made, the parties would have "agreed . . . as effectively as if that proviso had been written in the contract" (235 Md. at 608) that the failure to provide the purchaser with the opportunity to examine the Master Plan authorized the purchaser to terminate the contract. By this incorporation, the purchaser's power to terminate the contract becomes an implied condition to the other side's contractual rights, just as effectively as if it had been expressly written into the contract. *Prince George's Club v. Carr, supra,* 235 Md. at 608; *Griffith v. Scheungrab, supra.* Consequently, the termination of the contract permitted by § 12-1.18A results from the contract

itself, by virtue of its incorporation of the ordinance. Unlike the situation in *Rossberg,* it is not the forfeiture of a pre-existing property or contract right.

As previously mentioned, the plaintiffs do not in this Court challenge the City's authority to impose a duty upon the seller or his agent to provide a purchaser with the opportunity to examine the Master Plan, and thus we assume arguendo that the City is authorized by its charter or by state law to impose such duty. In light of our conclusion that the contract termination provision of § 12-1.18A does not effect a forfeiture, we believe that this particular remedy is, in the language of Dillon, *"fairly implied* in or *incident* to" [5] the power to impose the duty.

The purpose of § 12-1.18A is to provide certain information about the future planned course of development in the area surrounding the real estate to be purchased. The City Council of Rockville could reasonably conclude that the imposition of only fines and imprisonment, leaving the purchaser subject to the sales contract, would neither deter violations nor achieve the purpose intended by the ordinance, and that the most reasonable and effective sanction would be to permit the termination of the contract. Moreover, a grant to the purchaser of the right to cancel a contract is a frequently utilized remedy in consumer protection legislation. *See, e.g.,* Code (1975) §§ 14-302 to 14-303 of the Commercial Law Article; *id.* at § 12-605; Code (1974), § 10-102 of the Real Property Article. Under the circumstances of this case, we believe that the sanction in § 12-1.18A is an appropriate remedy that is reasonably designed to effect the concededly valid obligation and duties that the ordinance imposes.

*Judgment affirmed.*
*Appellants to pay costs.*

---

5. I J. Dillon, *Municipal Corporations* § 237 (5th ed. 1911).