6 A.3d 945

**LOUIS FIREISON & ASSOCIATES, P.A.**

v.

**Anita M. ALKIRE.**

**No. 1288, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Oct. 5, 2010.

462

Patricia H. Ley (Louis Fireison & Associates PA, on the brief), Bethesda, for appellant.

Brandi Phillips (Alan F.M. Garten, Fedder and Garten Professional Association, on the brief), Baltimore, for appellee.

Panel: ZARNOCH, GRAEFF, CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

GRAEFF, J.

This appeal arises from a dispute between Louis Fireison & Associates, P.A. ("Fireison"), appellant, and Anita M. Alkire ("Ms. Alkire"), appellee, over legal fees due pursuant to a contingency fee contract. The issues on appeal involve the proper forum to resolve the dispute.

In May 2007, Fireison filed a Complaint in the Circuit Court for Montgomery County. It sought a declaratory judgment awarding Fireison the legal fees it believed were owed by Ms. Alkire. In June 2007, Ms. Alkire petitioned the District of Columbia Attorney/Client Arbitration Board (the "Arbitration Board") to resolve the dispute. The circuit court granted Ms. Alkire's motion to stay the circuit court proceedings and to compel arbitration, and it ultimately ordered Fireison to comply with the Arbitration Board's decision and award.

Fireison appealed, and it presents two questions for our review, which we quote:

1. Did the trial court commit reversible error by compelling [appellant] to submit to arbitration when there was no agreement to arbitrate entered into by the parties?

2. Did the trial court commit reversible error by denying [appellant's] Motion to Vacate Arbitration Award and Lift Stay and granting Defendant's Petition to Confirm Arbitration Award?

For the reasons set forth below, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 20, 2000, Ms. Alkire was injured while being rescued from a broken elevator at the Marriott Wardman Park Hotel in Washington, D.C.[1] On May 15, 2003, Ms. Alkire, a California resident, entered into a contract for legal services (the "contract") with Fireison to represent her in her personal injury lawsuit against Marriott International, Inc. ("Marriott") and others.

The contract provided that Fireison was entitled to legal fees as follows:

> One-third of gross sum of whatever may be recovered from said claim of settlement without the necessity of filing court proceedings; 40% of gross sum of whatever may be recovered from said claim as a result of judgment or settlement after filing of court proceedings, 50% of gross sum of whatever may be recovered from said claim in the event of an appeal or second trial.

The parties did not include specific language in the contract regarding dispute resolution.[2]

---

1. The record does not contain transcripts of the hearing before the Arbitration Board or the hearing in the circuit court. Our discussion of the background of the case, therefore, is based on assertions made in the briefs submitted to this Court and the filings below.

2. The only language in the contract that relates in any way to dispute resolution states: "I agree to pay interest at the rate of 1[.5]% per

On Ms. Alkire's behalf, Fireison filed a claim against Marriott in the United States District Court for the District of Columbia. On March 16, 2006, the court entered a judgment in Ms. Alkire's favor in the amount of $1,040,000, plus costs and interest. On March 31, 2007, the court denied Marriott's Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial, or in the Alternative, to Alter or Amend the Judgment.

On April 24, 2007, Michael MacWilliams, Marriott's attorney, contacted Mr. Fireison to initiate settlement discussions. Mr. Fireison stated that the earliest dates he had available to discuss the case were May 8 or 9, 2007. On April 30, 2007, Marriott filed a notice of appeal. *See* Fed. R.App. P. 4(a) ("In a civil case ... the notice of appeal ... must be filed with the district clerk within 30 days after the judgment or order appealed from is entered.").

On May 8, 2007, settlement negotiations began. Mr. MacWilliams stated in an affidavit filed in the circuit court that the negotiations lasted approximately 45 minutes. Ms. Alkire states that she directed Mr. Fireison to accept the settlement the next day.

On May 16, 2007, Ms. Alkire wrote to Mr. Fireison regarding a dispute about the firm's legal fee. The primary dispute involved whether the firm was entitled to 40% of Ms. Alkire's total award from Marriott, or whether it was entitled to 50% of the award because they had prevailed on appeal.[3] Ms. Alkire demanded that Fireison "submit the 10% issue to

---

month for any balance more than 30 days past due. If legal proceedings are instituted against me for payment of any such bill, I agree to pay the reasonable costs of collection, including reasonable attorney's fees."

**3.** Ms. Alkire also disputed the amount owed to an expert witness and to Dr. Loeffler, whose role in the matter is unclear. Additionally, Ms. Alkire inquired about the services provided by an investigator, and she requested a detailed accounting of the "miscellaneous expenses" that Mr. Fireison submitted to her for payment. The total amount of disputed expenses was $22,804.41. That dispute is not before this Court.

mandatory fee dispute arbitration." She requested that Firei-son accept 40% of the award from Marriott as payment, put 10% in escrow pending the resolution of their dispute, "and out of the 50% remaining . . . pay approved 'deductions' and submit the remainder to me." [4]

On May 23, 2007, Fireison filed a Complaint in the Circuit Court for Montgomery County seeking a declaratory judg-ment awarding Fireison 50% of Ms. Alkire's total award. It alleged that Mr. Fireison resolved the appeal in Ms. Alkire's favor, and Ms. Alkire violated the terms of the contingency fee agreement by refusing to pay Fireison 50% of her total award.

On May 25, 2007, Mr. Fireison entered his appearance on Ms. Alkire's behalf in the appellate proceedings. On June 8, 2007, Ms. Alkire and Marriott filed a joint request to dismiss the case. On June 11, 2007, the United States Court of Appeals for the District of Columbia Circuit entered the order granting the joint request to dismiss the appeal.

On June 6, 2007, Ms. Alkire filed a request to arbitrate the alleged fee dispute with the Arbitration Board. On June 14, 2007, a representative of the Arbitration Board informed Fireison that Ms. Alkire had initiated a fee dispute proceed-ing. On July 5, 2007, however, the Arbitration Board advised Ms. Alkire that it would be unable to resolve the fee dispute unless the circuit court either dismissed or stayed Fireison's proceeding regarding its legal fees.[5]

On July 27, 2007, Fireison filed in the circuit court a Motion for Summary Judgment and Request for Hearing. On August 1, 2007, Ms. Alkire filed a Motion to Stay Proceedings and to Compel Arbitration. On August 14, 2007, Ms. Alkire filed an opposition to Fireison's Motion for Summary Judgment, and

---

**4.** Ms. Alkire stated in the lower court that the amount in dispute, representing 10% of Ms. Alkire's settlement, was $110,252.20, and it was placed in escrow. Fireison requested that Ms. Alkire place an additional $5,000 in escrow to pay the costs of resolving the dispute.

**5.** The Arbitration Board subsequently stated that it closed the matter "because it was pending in two different forums," indicating that "it would re-open pursuant to a court order staying the pending litigation."

she filed her own Motion for Partial Summary Judgment, requesting the court to direct Fireison to remit to Ms. Alkire 50% of the total award, less the amount in disputed deductions and $5,000 in attorney's fees that Fireison asked Ms. Alkire to put into escrow.[6]

On September 10, 2007, the court issued an order granting Ms. Alkire's Motion to Stay Proceedings and to Compel Arbitration. That same day, it issued another order that denied Fireison's Motion for Summary Judgment and stayed Ms. Alkire's Motion for Partial Summary Judgment. This latter order included language that judgment be entered in favor of Fireison on the complaint. On October 5, 2007, the court issued an amended order deleting this language and reiterating its order denying Fireison's motion for summary judgment and staying Ms. Alkire's motion for partial summary judgment.

On January 28, 2008, the Arbitration Board, which was in receipt of only the September orders, refused Ms. Alkire's request to re-open the fee dispute resolution proceedings. Specifically, the Arbitration Board asserted:

> After reviewing the Orders as well as the Complaint that was filed in the Circuit Court for Montgomery County, the [Arbitration Board] declines to re-open this case. It appears that this is a dispute over the interpretation of the contract entered into between the parties. The Order filed on September 12, 2007, grants judgment to the Plaintiff (the respondent in the fee dispute before the [Arbitration Board]) as to Count 1 of the Complaint. The [Arbitration Board] does not have jurisdiction to overturn the Order [directing that judgment be entered in favor of Fireison] issued on September 10, 2007. Given that the court has already issued substantive rulings in this matter it appears that this matter should be handled and resolved by the Circuit Court in Montgomery County, where it was initially filed.

---

6. In total, Ms. Alkire asked the circuit court to order Fireison to remit to her $524,821.59.

On February 5, 2008, Fireison filed a Motion to Lift Stay in the circuit court, stating that the Arbitration Board had declined to re-open the fee dispute matter. On February 8, 2008, Ms. Alkire wrote a letter to the Arbitration Board, with a copy to Fireison, to explain the error in the September order, to clarify that the circuit court had not entered judgment on Fireison's behalf, and to inform the Arbitration Board that the circuit court had issued an order compelling the parties to arbitrate the fee dispute.

On February 13, 2008, Fireison wrote a letter to the Arbitration Board, with a copy to Ms. Alkire's counsel, to clarify Fireison's interpretation of the Board's January 28, 2008, letter. Fireison stated its understanding that the Arbitration Board had determined that the dispute involved the interpretation of a contract, a "matter [ ] more appropriately addressed in the Circuit Court for Montgomery County rather than a fee dispute forum." Fireison expressed its intent "to proceed in the Circuit Court for Montgomery County to bring this case to a final resolution."

On February 19, 2008, Ms. Alkire filed in the circuit court an Opposition to [Fireison's] Motion to Lift Stay and Motion for Sanctions, alleging that the Arbitration Board had erroneously determined that it lacked jurisdiction to resolve the fee dispute based on the September order, that Fireison had failed to take any steps to advise the Arbitration Board of the errors in the September order, and that Fireison intentionally exploited the Arbitration Board's erroneous interpretation of the circuit court's September order. On April 18, 2008, the court issued an order denying Fireison's Motion to Lift Stay.

On May 7, 2008, the Arbitration Board wrote to the parties, stating:

> This matter was pending in two different forums; before the [Arbitration Board] and before the Circuit Court for Montgomery County, Maryland. Because the fee dispute could not continue in two parallel forums, and because the [Arbitration Board] does not have superior jurisdiction over

the Circuit Court for Montgomery County, the [Arbitration Board] closed the case.

It appears that substantive rulings have already been made in the Circuit Court for Montgomery County. The [Arbitration Board] does not have jurisdiction to overturn these court orders. Therefore, the [Arbitration Board] will not re-open this case unless instructed to do so by Order of the Circuit Court for Montgomery County.

On June 16, 2008, the circuit court issued another order, which denied Fireison's Motion to Lift Stay, compelled Fireison to submit the claims raised in the circuit court to the Arbitration Board, and stayed all counts in the Complaint pending the Arbitration Board's resolution of the dispute.

On March 3, 2009, the Arbitration Board met to resolve the dispute between Ms. Alkire and Fireison. Ms. Alkire sought the following relief: "total sums deposited to escrow account, including $110,524.20 (10% of award), plus $5,000 (attorney's fees), plus accumulated interest less three hours of attorney's time at $350/hr." The Arbitration Board issued the following decision: "Respondent Fireison to remit all sums currently held in Escrow including, but not limited to, 10% of the award ($110,524.20), attorney's fees ($5,000), and current accumulated interest *less* $5,500 to be retained by respondent Fireison."

On March 31, 2009, Fireison filed in the circuit court a Motion to Vacate Arbitration Award and to Lift Stay, alleging:

"The [Arbitration Board] [ ] essentially 'rewrote' the contract entered into by and between the parties which is the subject of the Complaint and counsel has been unable to determine the basis of such award. Further, the award is wholly inconsistent with the plain language of the contract entered into by and between the parties. There is no dispute as to the validity of the contract, nor as to legal services.

Fireison argued that the court should vacate the arbitration award because the arbitrators exceeded their powers, asserting that there was never an agreement to arbitrate and "the arbitration panel lacked jurisdiction to address the matter."

Ms. Alkire disagreed, arguing that Mr. Fireison, as a member of the District of Columbia bar, agreed to arbitrate all fee disputes pursuant to D.C. Bar R. XIII(a), and the Arbitration Board did not exceed its authority or its jurisdiction in resolving the dispute. In addition to opposing Fireison's Motion to Vacate Arbitration Award, Ms. Alkire filed a Motion to Confirm Arbitration Award and a Motion for Sanctions.

The court held a hearing on June 1, 2009.[7] On July 14, 2009, the circuit court issued an order denying Fireison's Motion to Vacate Arbitration Award, granting Ms. Alkire's Petition to Confirm Arbitration Award, denying Ms. Alkire's Motion for Sanctions, and ordering Fireison to comply with the Arbitration Board's March 3, 2009 decision.

This timely appeal followed.

## DISCUSSION

Fireison contends that the trial court erred in compelling it to submit to arbitration, arguing that there was no agreement to arbitrate between the parties. Noting that the contract lacked express language requiring the parties to arbitrate disputes, Fireison argues that it " 'cannot be compelled to arbitrate that which it never agreed to arbitrate.' " (Citation omitted).

Fireison further contends that, after the Arbitration Board rendered its decision, the circuit court erred in denying its Motion to Vacate Arbitration Award and in granting Ms. Alkire's Petition to Confirm Arbitration Award. Although couched in various ways, Fireison's argument boils down to its assertion that the arbitration award was improper because there was no agreement to arbitrate the dispute at issue here.[8]

---

**7.** As indicated, a transcript of the hearing was not submitted to this Court as part of the record.

**8.** In its reply brief, Fireison argues, for the first time, that the arbitration panel "reached a completely irrational award, which would also require that the arbitration award be vacated." Fireison argues that, rather than determine the only issue presented, when the 50% contin-

Ms. Alkire contends that there was an agreement to arbitrate between the parties. She points to D.C. Bar R. XIII, which provides that, in certain circumstances, "[a]n attorney subject to the disciplinary jurisdiction of this Court shall be deemed to have agreed to arbitrate disputes over fees for legal services." She argues that, because Mr. Fireison represented her in a court proceeding in the District of Columbia and was a member of the District of Columbia Bar when he represented her, Mr. Fireison was subject to the rule. Ms. Alkire asserts that "[t]he D.C. Rules, which were in effect at the time the Contract was entered into and performed, were incorporated into and became a part of the agreement between the parties." As such, and because the dispute between the parties was a fee dispute, Ms. Alkire argues that the circuit court was correct in compelling Fireison to resolve the fee dispute through arbitration, and in ultimately confirming the arbitration award.

In Maryland, there is a " 'strong legislative policy favoring enforcement of arbitration agreements.' " *All State Home Mortg., Inc. v. Daniel,* 187 Md.App. 166, 178, 977 A.2d 438 (quoting *Commonwealth Equity Servs. v. Messick,* 152 Md.App. 381, 393, 831 A.2d 1144 (2003)), *cert. denied,* 410 Md. 560, 979 A.2d 707 (2009). A party, however, " 'cannot be required to submit any dispute to arbitration that it has not agreed to submit.' " *Questar Homes of Avalon, LLC v. Pillar Constr., Inc.,* 388 Md. 675, 685, 882 A.2d 288 (2005) (quoting

gency fee provision is triggered, the arbitration panel "disregarded the terms of the Contract for Legal Services" and "replaced the terms with that of [sic] the panel's own terms." Fireison argues that "[r]eplacing an otherwise valid and enforceable term of a contract, that was considered and agreed to by the parties, with an arbitrator's own terms violates the fundamental principle of a party's right to freely and voluntarily enter into a contract."

Ms. Alkire filed a motion to strike this part of the reply brief, arguing that, because this issue was not raised in Fireison's initial brief, it should not be addressed. This Court generally does not consider issues raised for the first time by the appellant in its reply brief. *Robinson v. State,* 404 Md. 208, 216 n. 3, 946 A.2d 456 (2008). Accordingly, we grant Ms. Alkire's motion, and we will not address this argument.

*Allstate Ins. Co. v. Stinebaugh,* 374 Md. 631, 648, 824 A.2d 87 (2003)).

When there is a dispute regarding the existence of an arbitration agreement, Md.Code (2006 Repl. Vol.), § 3–207 of the Courts & Judicial Proceedings Article ("C.J.P.") sets forth the procedure to resolve the dispute:

(a) *Refusal to arbitrate.*—If a party to an arbitration agreement . . . refuses to arbitrate, the other party may file a petition with a court to order arbitration.

(b) *Denial of existence of arbitration agreement.*—If the opposing party denies existence of an arbitration agreement, the court shall proceed expeditiously to determine if the agreement exists.

(c) *Determination by court.*—If the court determines that the agreement exists, it shall order arbitration. Otherwise it shall deny the petition.[9]

■ After a court has determined that arbitration is required, and the arbitration panel has made a decision, the Court may not disturb the award except under the "narrow grounds" set forth under C.J.P. § 3–224. *Letke Sec. Contrs., Inc. v. United States Surety Company,* 191 Md.App. 462, 471, 991 A.2d 1306 (2010). Section 3–224(b) provides:

The court shall vacate an award if:

(1) An award was procured by corruption, fraud, or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

---

**9.** Although the court here did not specifically state that it found that there was an agreement to arbitrate, the statute required such a determination, and a trial court is presumed to know the law and follow it. *See State v. Chaney,* 375 Md. 168, 179, 825 A.2d 452 (2003) (" '[T]rial judges are presumed to know the law and to apply it properly.' ") (quoting *Ball v. State,* 347 Md. 156, 206, 699 A.2d 1170 (1997)).

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement, refused to hear evidence material to the controversy, or otherwise so conducted the hearing, contrary to the provisions of § 3-213 of this subtitle, as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement as described in § 3-206 of this subtitle, the issue was not adversely determined in proceedings under § 3-208 of this subtitle, and the party did not participate in the arbitration hearing without raising the objection.

On appeal, Fireison argues that the court erred in two respects: (1) the initial order compelling arbitration; and (2) the subsequent order denying the motion to Vacate Arbitration Award and granting the Petition to Confirm the Arbitration Award. As indicated, however, the dispositive question before this Court on each issue is whether the parties had an agreement to arbitrate the dispute. If there was no agreement to arbitrate the issue in dispute, then the circuit court erred in compelling arbitration and in denying Fireison's Motion to Vacate the arbitration award. Thus, we turn to whether there was an agreement to arbitrate here.

"The issue of whether an agreement to arbitrate exists is governed by contract principles." *All State,* 187 Md.App. at 180, 977 A.2d 438 (quoting *Holloman v. Circuit City Stores, Inc.,* 391 Md. 580, 590, 894 A.2d 547 (2006)). "The interpretation of a written contract, including whether a dispute is subject to arbitration, is a question of law, which is reviewed *de novo." Id.* (citing *Walther v. Sovereign Bank,* 386 Md. 412, 422, 872 A.2d 735 (2005)).

Here, there is no explicit language in the contract providing for an agreement to arbitrate a dispute regarding legal fees. It is well established, however, that " 'parties to a contract are presumed to contract mindful of the existing law and that all applicable or relevant laws must be read into the agreement of the parties just as if expressly provided by them, except where a contrary intention is evident.' " *Hearn*

*v. Hearn,* 177 Md.App. 525, 535, 936 A.2d 400 (2007) (quoting *Auction & Estate Representatives, Inc. v. Ashton,* 354 Md. 333, 344, 731 A.2d 441 (1999)). *Accord Dennis v. The Mayor and City Council of Rockville,* 286 Md. 184, 189, 406 A.2d 284 (1979) ("[T]he laws subsisting at the time of the making of a contract enter into and form a part thereof as if expressly referred to or incorporated in its terms, and the principle embraces alike those provisions which affect the validity, construction, discharge and enforcement of the contract.").

Ms. Alkire argues that there was a law existing at the time the parties entered into the contract requiring arbitration of the dispute, and this requirement was incorporated into their agreement. The law upon which Ms. Alkire relies is D.C. Bar R. XIII(a), which provides:

> *An attorney subject to the disciplinary jurisdiction of this Court shall be deemed to have agreed to arbitrate disputes over fees for legal services* and disbursements related thereto when such arbitration is requested by a present or former client, if such client was a resident of the District of Columbia when the services of the attorney were engaged, *or if a substantial portion of the services were performed by the attorney in the District of Columbia, or if the services included representation before a District of Columbia court or a District of Columbia government agency.*

(Emphasis added).[10]

Mr. Fireison, who counsel acknowledged at oral argument was a member of the District of Columbia Bar, is subject to its

---

**10.** The Maryland Court of Appeals has held that Maryland Lawyer's Rules of Professional Conduct ("MLRPC"), "rules adopted by th[e] Court (Md. Rule 16–812) in the exercise of its inherent Constitutional authority to regulate the practice of law," have "the force of law." *Post v. Bregman,* 349 Md. 142, 163, 707 A.2d 806 (1998). This same analysis applies to the District of Columbia Bar Rules, which were drafted by the District of Columbia Court of Appeals "in the exercise of its inherent powers over members of the legal profession ... pursuant to its statutory authority governing admissions to the Bar." D.C. Bar R. Preamble. D.C.Code § 11–2501(a) (2001) ("The District of Columbia Court of Appeals shall make such rules as it deems proper respecting

rules. Pursuant to D.C. Bar R. XIII(a), therefore, he is "deemed to have agreed to arbitrate disputes over fees for legal services" because Ms. Alkire requested arbitration and "the services included representation before a District of Columbia court." [11]

In *Kelley Drye & Warren v. Murray Indus., Inc.*, 623 F.Supp. 522 (D.N.J.1985), the United States District Court for the District of New Jersey addressed a similar issue. In that case, the law firm initiated proceedings in federal court against a former client seeking unpaid legal fees, but the court held that the firm was required to arbitrate the dispute pursuant to New Jersey Court Rule 1:20A–2(a), which provided that "[a] fee dispute shall be arbitrated [ ] upon the client's written request." *Id.* at 523. The court stated:

[W]hen [the law firm] elected to avail itself of the right to practice law in New Jersey it undertook to do so in accordance with the Rules and procedures established by the New Jersey Supreme Court. It did not shed itself of the obligations it assumed and the limitation to which it subjected itself simply because it chose to institute its action for attorneys' fees in the federal court.

*Id.* at 525.

Similarly, when Fireison elected to avail himself of the right to practice in the District of Columbia, he agreed to abide by the Rules established by the District of Columbia Court of Appeals. Pursuant to D.C. Bar R. XIII, Fireison agreed to arbitrate a fee dispute with Ms. Alkire upon her request. Fireison's contention that there was no agreement to arbitrate fee disputes is without merit.

---

the examination, qualification, and admission of persons to membership in its bar, and their censure, suspension, and expulsion.").

11. Although the MLRPC do not require attorneys to submit fee disputes to arbitration, we note that Comment 9 to MLRPC Rule 1.5 provides: "[i]f a procedure has been established for resolution of fee disputes, such as an arbitration or mediation procedure established by the bar, the lawyer must comply with the procedure when it is mandatory, and even when it is voluntary, the lawyer should conscientiously consider submitting to it."

■ Fireison next contends, however, that even if there was an agreement to arbitrate fee disputes, the dispute here was not a fee dispute. Rather, it argues that the dispute involved the interpretation of the contract's fee provision, which provided that Fireison would receive legal fees in the amount of 50% of the recovery "in the event of an appeal." Fireison contends that, because the dispute involved the interpretation of a specific contract term, *i.e.,* "[t]he meaning of the phrase 'in the event of an appeal,'" the ruling requested in the Complaint "was not subject to mandatory fee arbitration." [12]

Ms. Alkire contends that the dispute between the parties is a fee dispute subject to D.C. Bar R. XIII. She states that Fireison "offers absolutely no support for its position to the court" and that Fireison's statement "is patently without merit." We agree.

Rule of Procedure 3(b) of the Attorney/Client Arbitration Board defines the fee disputes that are subject to arbitration as disputes "about the fee paid, charged, or claimed for legal services." The dispute between the parties here, the amount of fees to which Fireison is entitled, clearly falls within the definition of a fee dispute subject to arbitration. Thus, pursuant to D.C. Bar R. XIII, Mr. Fireison is deemed to have agreed to arbitrate this dispute.

As indicated, the premise of Fireison's argument that the circuit court erred in: (1) compelling arbitration; and (2) declining to vacate the arbitration award and confirming the award is that there was no agreement to arbitrate the dispute regarding the legal fees owed to Fireison. Given our holding that there was an agreement to arbitrate fee disputes pursuant to D.C. Bar R. XIII, and that the dispute here is a fee dispute, Fireison's contentions of error are without merit.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. MOTION TO STRIKE**

---

**12.** Fireison appears to suggest that the Arbitration Board's jurisdiction is limited to resolving disputes involving "[t]he quality of legal representation and services provided."

**SECTION II.B. OF APPELLANT'S REPLY BRIEF GRANTED. COSTS TO BE PAID BY APPELLANT.**