## SACHINDRA N. PRADHAN ET AL. *v.* GERSON T. MAISEL ET AL.

[No. 940, September Term, 1974.]

*Decided June 5, 1975.*

The cause was argued before MOORE, LOWE and MASON, JJ.

*Lowell L. Maguire* for appellant Sachindra N. Pradhan and *James K. Foley* for other appellant.

*N. Alfred Pasternak,* with whom was *Morris D. Schwartz* on the brief, for appellees.

LOWE, J., delivered the opinion of the Court.

Pinkas Fliegel (Fliegel) a real estate broker sued RMR Corporation (RMR) and Gerson T. Maisel (Maisel) for a commission claimed due for having sold a small shopping center to Sachindra N. Pradhan (Pradhan), who also sued RMR and Maisel for specific performance. The cases were tried together before Judge Samuel W. H. Meloy sitting as the Circuit Court for Prince George's County. He decided that the contract of sale never came into existence because of the failure of a condition precedent. Both Fliegel and Pradhan appealed.

RMR was a corporation incorporated in the District of Columbia authorized to buy, hold or sell real estate. Although it had owned and sold at least two other properties, its then single asset was the College Park shopping center. Maisel, the president of RMR listed the property for sale with Fliegel for $180,000.00.

The entire stock of RMR was held by three parties in equal shares, Maisel the president, Mr. Sites the secretary and the estate of Romeo Cantilena through its personal representative. The three also comprised the Board of Directors.

Fliegel interested Dr. Pradhan in the property but not to the extent that he offered the full purchase price. Twice contracts were submitted for amounts under that price and twice Maisel rejected them out of hand. After the last rejection, Fliegel with one of his agents (Masciana) proceeded to negotiate a compromise higher than the rejected offer but lower than the list price from Maisel. Upon reaching a satisfactory figure, they completed a form contract by hand and obtained Maisel's signature. The effect of that signature, *i.e.,* whether it merely indicated Maisel's approval subject to the secretary's concurrence, or whether Maisel's signature alone operated to bind the corporation, is the crux of this case.

As might be guessed the testimony relevant to that issue differed. Maisel testified that it was a procedural short-cut in no way intended to bind the corporation without the signature of the secretary Mr. Sites:

> "A $160,000. Then he said I will write another contract. So, we proceeded from the basement into the dining room where this contract was written. Then he said, 'this contract here will be presented to Mr. Pradhan.' Mr. Masciana pleaded that he could not possibly ever get this contract approved. It was just too much money and there was the pleading, constantly by Mr. Masciana. He didn't think he could ever get it accepted, the price had to be reduced, but then Mr. Fliegel told him to take it to Mr. Pradhan and make an attempt to get it approved, but in the meantime Mr. Fliegel told me to affix my signature because he will bring it back to me and I would present it to the secretary for signature and that will be when it is one less step to take, so my signature was placed on the contract before anyone elses knowing that Mr. Fliegel would bring it back to me. I would discuss it with Mr. Sites and proceed from there."

Mr. Fliegel's recollection was not the same:

> "Q Mr. Fliegel, did you discuss at the time of that negotiation on November 1st that you have already testified to, did you discuss with Mr. Maisel his authority?
>
> A Yes. I was asking Mr. Maisel what is the need of the signature of the secretary and he says not, 'I am, have the controlling shares. I acquired the majority since one of the partners died and I always do sign these contracts and they always, my people always agree it was me."

For emphasis he added:

> "A Well, as a matter of fact I want him to, I

wanted to go to the secretary. He said, 'You don't need it.' He kept assuring me, you don't need it."

On cross-examination he was asked:

"Q Did he ask you to bring it back to him, not what he expected. Did he ask you to bring the contract back to him?

A I think the way he said, 'go see if your buyer is going to sign it.' That is what he said.

Q Then, 'bring it back to me' ?

A Well, I think that is what he said, just to see if your buyer will sign it then you have a deal.

Q Did he say, 'then you have a deal or did he say

—

A 'If your buyer sign it then you have a deal.' That is the word he said."

A third version was provided by Fliegel's agent Masciana who was present at the signing:

"THE WITNESS: Well, actually we didn't discuss anything until he signed it. When he signed Mr. Fliegel picked up the, he was writing it, picked up and said this is a corporation we would like to have somebody, you know, counter sign, a secretary or something. Then I told him, how come, I didn't know, you know, you didn't tell me it was a corporation. Fliegel had never told me it was a corporation. I assumed that Mr. Maisel was the sole owner, but then he said, you know, we have to have somebody else's signature.

Mr. Maisel objected to that. He said it really was not necessary. That he had done all of the business of the corporation on his own, on both of the times that his signature was good. We insisted, we would like to have someone else."

On three occasions Maisel or his attorney wrote Fliegel who was presumably acting on behalf of Pradhan expressing

Maisel's inability to arrange settlement at the time set by Fliegel and postponing that event for 32 days. Each letter concluded that this additional time would permit Maisel either to discuss "the matter more fully with Mr. Sites, the Secretary of R.M.R. Corp. who, I understand from Mr. Morris Schwartz, attorney for R.M.R. Corp. must sign the deed transfer." or that "he [Maisel] will need this additional time to obtain the consents of the other two stockholders."

Finally Mr. Schwartz wrote the attorney whom Fliegel had indicated would represent Pradhan:

> "RMR Corporation is unable to settle on the purchase offer signed by Sachindra Pradhan, dated November 1, 1973, and which was never fully executed by RMR."

Appellants Fliegel and Pradhan by identical briefs raise five questions. The first two relate to the requirement of Md. Rule 342 setting forth "Matters to be Pleaded Specially." Appellants claim that a special plea is necessary before a defense "That the Contract made was Ultra Vires" Md. Rule 342 c 1 (g), may be asserted. They further allege that subsection (j) of the same rule requires that "a denial of the execution of any written instrument alleged in the pleadings" must be specially pleaded.

On the principles thus expressed there is no doubt; however, we fail to see the relevancy here. There was no assertion by appellee that the corporation was without authority to sell. The defense was that the corporation did not contract, not that it had no authority to do so. The authority in dispute was Maisel's — not the corporation's.

Nor was there any denial in the record that the instrument was executed. To the contrary Maisel expressly admitted signing it as is indicated by his testimony repeated here. The admission of the signature, however, does not foreclose a defense under the general issue plea relating to the legal effect of that signature. The defense asserted is precisely that pled, *i.e.*, that appellees were not indebted as alleged because they had not promised as alleged.

Appellants would have us interpret the Rule to require a special plea whenever one denied that he had entered a contract. Such is not the intent of the rule. Under the former statute [1] after which the Rule is fashioned a failure to deny the execution of the instrument operated as an admission of the execution. It is an unnecessary procedural burden of proving the signature when that is not an issue, from which a plaintiff was relieved by the Act (Rule), *Cf. Farmers & Mechs. Natl. Bank v. Harper*, 151 Md. 358, 361; *Banks v. McCosker*, 82 Md. 518, 525. Even the dicta in a partnership case quoted by appellants explains that purpose:

> "At common law, whenever a declaration alleged a partnership or a corporation or a written instrument material under the pleadings, and issue was joined on the general issue pleas, the burden was on the plaintiff to prove the existence of the partnership or the corporation or the genuineness of the instrument. In the great majority of cases it was impossible to refute the allegation . . . In order to obviate this useless procedure, the Legislature in 1888 enacted the rule that whenever the pleadings in an action at law allege the partnership of any parties, or a corporation, or the execution of any written instrument filed in the case, the same shall be taken as admitted unless denied by the next succeeding pleading of the opposite party . . . The object of the statute is to facilitate the trial of cases by requiring defendants to declare whether they demand such proof." *McBriety v. Phillips*, 180 Md. 569, 571-572.

Finally, although the same questions are raised and arguments set forth by both appellants, we fail to see how Pradhan can complain. He received adequate notice of his opposition's arguments because his equity suit was answered in detail, paragraph by paragraph, setting forth the defense of unfulfilled condition precedent.

---

1. Laws of Maryland 1888, Ch. 248.

Appellants' next three questions assert that the trial court erred 1) in finding a condition precedent to the contract, 2) in failing to find a subsequent ratification of the contract, and 3) in declining to hold that Maisel had apparent authority to execute the contract on behalf of RMR. As to question 2, there is simply no evidence of subsequent ratification. Question 3 is subsumed by question 1 in this case since if all parties were aware of the existence of a binding contract depended on fulfillment of the condition precedent, *viz.*, obtaining a second signature, there could have been no apparent authority.

We hardly need repeat that no contractual duty arises when there is an unfulfilled condition precedent to a contract:

> "It is fundamental that where a contractual duty is subject to a condition precedent, whether express or implied, there is no duty of performance and there can be no breach by non-performance until the condition precedent is either performed or excused." *Laurel Race Course, Inc. v. Regal Construction Co., Inc.*, 274 Md. 142, 154.

The trial judge found that the signature of the secretary Mr. Sites was a condition precedent of which Fliegel was aware:

> "Then the Court heard the testimony of a defendant, president, who testified unrebutted that he instructed Fliegel to return the contract for the secretary's approval. Sites testified that the first thing he knew of a contract was when he received a call, I believe he said for Mr. Maisel that some one was calling on the telephone in Mr. Maisel's business establishment. I can only infer that they were somewhere close together, but in any event he answered the phone and talked to a person who named himself known as Pinkas Fliegel and discussed the signing of the contract.

He said over the phone that he did not know about the contract, and wished to make an appointment with Mr. Fliegel, told him to call me at my office, received a call from Fliegel, said he had a contract he wanted me to sign.

Now, the Court is mindful of dealing in the market place with respect to real estate transactions. It is mindful of the activities of close corporations, and interprets the evidence in this case that there was a condition precedent restricting the effect of the instrument.

The contract, Plaintiff's Exhibit No. 5 which may be, and was shown by parol evidence, it being not a contradiction of the written instrument, but going to the very existence of a contract and tends to show and does show that no valid contract ever existed." [2]

Not only are we bound by that finding simply because it is not "clearly erroneous" Md. Rule 1086, our own review of the record leaves us in complete accord with the result. Although the court here found, and we affirm, the non-existence of the contract based upon an express condition precedent, there is authority that would impute a condition precedent into the contract as a matter of law and presume the broker's knowledge thereof through his experience as well as other language of the contract.

In *Prince George's Club v. Carr*, 235 Md. 591, a broker sued for a commission for the sale of a country club property based upon an executed contract of sale which failed for want of approval by the stockholders. The Court decided that a final settlement was a condition precedent to the payment of the commission due to the circumstances of the case and the inclusion of a condition that the broker's commission was to be paid at time of

---

2. "Parol evidence is admissible not to alter or contradict the terms of a written contract but to show that there was not a contract at all or that the writing was not to become one until a certain time or until the happening of certain events." Lutz v. Porter, 206 Md. 595, 600.

settlement from the sale proceeds. The Court then read into the contract Md. Code, Art. 23, § 66 requiring two-thirds stockholders' approval of any corporation selling all or substantially all of its assets.[3]

> "This Court, in various decisions over a long span of years, has cited and applied 'the general rule that subsisting laws enter into and form part of a contract as if expressly referred to or incorporated in its terms, and the rule embraces alike those provisions which affect its validity, construction, discharge, and enforcement.' *Holmes v. Sharretts*, 228 Md. 358, 367, citing recent decisions. See also *Griffith v. Scheungrab*, 219 Md. 27, citing earlier Maryland cases to the same effect. As was pointed out in *Holmes* and *Griffith*, Professor Corbin (3 *Corbin, Contracts*, Sec. 551) disagrees with the statement that subsisting laws are incorporated into a contract but he recognizes the validity of the general principle recognized in those cases. It is his view that 'words and other symbols must be interpreted in the light of surrounding circumstances; and the existing statutes and rules of law are among those circumstances.' (p. 198)

> The surrounding circumstances, including the limitation by reason of Code (1957), Art. 23, Secs. 65 and 66, that the Club could not make the sale that Mr. Coates, the vice-president of the broker, had arranged without the approval of two-thirds of its stockholders, make it appear to us that the condition of no commission without a settlement and payment of the purchase price was applicable if the stockholders did not approve the sale." *Prince George's Club*, 235 Md. at 607.

Finally the Court charged the broker with the knowledge

---

**3.** D. C. Code, § 29-928 which only requires authority of the Board of Directors would, in this case where the three equal stockholders are also the members of the board, effect the same result.

that the Club was selling substantially all of its assets and that the stockholders had the final say:

> "We think he cannot have failed to know that the Club intended to sell substantially all of its assets, and that the stockholders were the persons who, as a group, had the final say when a chance to do so was presented, (he himself had told the second stockholders meeting he attended that one of the terms of the contract he proposed was the deposit was subject to 'ratification of agreement') and that he was chargeable with knowledge that two-thirds of the stockholders must approve if such a sale were to go through. Under these circumstances, when Edw. R. Carr, Inc., by Mr. Coates, signed the contract which embodied the condition that its commission was to be paid at settlement and from the purchase price then payable, it agreed that it would get no commission unless the stockholders of the Club approved the sale as effectively as if that proviso had been written in the contract in so many words. *Holmes v. Sharretts*, supra." *Id.* at 608.

The analogy here is apparent. The contract contained a similar clause referring to the time and source of payment of a commission.[4] The shopping center was the sole asset of the corporation and Fliegel's own testimony indicated his awareness that there were other prerequisites to consummation of the sale. As to Pradhan, it is not even necessary to impute Fliegel's knowledge to him from the obvious fact that, whatever may have been his legal obligation, Fliegel was in actuality acting as Pradhan's agent as well as RMR's. Pradhan expressly admitted that he was aware of the unfulfilled condition to the consummation of the contract. On cross-examination he was asked about

---

4. "The seller agrees to pay to Fliegel Real Estate, his agents, a commission amounting to $6^1/2\%$ and the Title Company, or Real Estate Office through which settlement is made is hereby authorized and directed to make deduction of the aforesaid commission from the proceeds of the sale and to make payment thereof to the said agent."

his knowledge of the letters from Maisel and his attorney to Fliegel:

"Q Then you understood the paragraph which referred to the fact that it was necessary for the secretary to sign the deed of transfer?

A Yes.

Q Let's see now, that is Plaintiff's Exhibit No. 11, you say you got a copy of that letter, is that correct?

A Yes.

Q And, did you read it at the time you got your copy?

A I expected I would read it.

Q Did you understand what you, what the contents of it were?

A I thought so.

Q Then you understood that Mr. Maisel needed an additional time to secure the consent of the other two stockholders?

A Sure.

A And, on February — did you receive a copy of this letter, Plaintiff's Exhibit No. 12?

A Yes.

Q And —

A Can I add a footnote? Each time I was told that all of the settlements are being met to seek these things which are being done so this is after each letter when corresponding with Fliegel Real Estate, they were telling me that Mr. Maisel is doing his best to get all of these necessary things. No doubt — so I had no doubt.

THE COURT: Mr. Maisel was doing what?

THE WITNESS: To secure these consents or to get the signature, everything that is needed for the deed, that I was told by Mr. Fliegel or Mr. Masciana that he still hold the majority of the

shares and there will be no difficulty in getting these things and he will be getting it.

By Mr. Pasternak:

Q But he was saying, still trying to get them? He hadn't gotten them yet, that is what you were told?

A Right."

But the analogous reasoning of the *Carr* case is merely a cumulative support for this holding. Although it precisely fits the facts of this case the finding here by the trial judge of an express condition precedent eliminates the need for application of *Carr,* appropriate as it is. We note in passing that we heartily concur with his finding that Fliegel was aware of the condition precedent.

"I can't help but comment to the reprehensible and immoral activities of the president of R.M.R., Dr. Pradhan is an innocent victim of a fast shuffle, but the fast shuffle was predicated at the outset upon Mr. Fliegel who finagling in this instance because he knew very well that the contract required compliance with the conditions precedent."

> *Judgment affirmed.*
> *Costs to be shared equally by appellant Fliegel and appellee Maisel.*