977 A.2d 438

## ALL STATE HOME MORTGAGE, INC.

v.

## Francis A. DANIEL, et al.

## No. 579, Sept. Term, 2008.

Court of Special Appeals of Maryland.

June 9, 2009.

Reconsideration Denied Sept. 1, 2009.

168

A.P. Pishevar (Leonard Tober, Timothy J. Tinsman, A.P. Pishevar & Associates, PC, on the brief), Rockville, for Appellant.

Alan B. Fischler, Geoffrey T. Crouse, Bethesda, for Appellee.

Panel: HOLLANDER, GRAEFF and KEHOE, JJ.

GRAEFF, Judge.

This appeal arises from a dispute between appellees, Francis A. Daniel and Eulene P. Daniel ("the Daniels"), and appellant, All State Home Mortgage, Inc. ("All State"), regarding refinancing of the Daniels' house. Specifically, it involves All State's attempt, after it failed to disburse the loan and the Daniels filed suit, to compel arbitration based on an arbitration agreement that the Daniels signed. The circuit

court initially granted All State's motion to compel arbitration. On a motion for reconsideration, however, the court concluded that the arbitration agreement was unenforceable because All State did not sign the agreement. All State appealed from the circuit court's order and presents one issue for our review, which we rephrased: Where the terms of the agreement expressly state that the agreement to arbitrate is effective and binding when both parties sign it, and where All State failed to sign the agreement, did the circuit court properly conclude that the arbitration agreement was unenforceable? [1]

For the reasons set forth below, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

The Daniels applied for a loan with All State to refinance their home in Rockville, Maryland. In early September 2006, the Daniels' loan officer informed them that their loan application was approved.

On September 15, 2006, the Daniels and All State "closed" on the loan.[2] The contract provided that All State would loan $649,999 to the Daniels to pay off two existing mortgages, credit card bills, vehicles, and other outstanding debts in exchange for a security interest in the Daniels' home. The loan amount also included a cash disbursement of approximately $48,000 to the Daniels. The settlement statement indicated that All State would disburse the loan funds on September 20, 2006.

---

1. All State presented the following issue in its brief:
 On *reconsideration,* did the court err in finding a lack of mutuality in the agreement to arbitrate thereby *reversing* its prior ruling granting appellant's Petition to Compel Arbitration?

2. All State contends that the parties entered into a "courtesy closing," which means that "[t]he loan was closed with a stipulation." The Daniels testified that they were informed that they were approved for the loan, that the loan would be funded three days after settlement, and they were never informed that the settlement was a "courtesy closing."

Several days prior to the closing, the Daniels signed an arbitration agreement,[3] which provided as follows:

## AGREEMENT FOR THE ARBITRATION
## OF DISPUTES

Maintaining a good relationship with our loan applicants and borrowers is very important to us.

("We, our or us") request the person(s) named below ("you") to contact us immediately if you have a problem with a loan application or loan transaction with us. Often a telephone call to us will resolve the matter amicably and as quickly as possible. However, if you and we are not able to resolve our differences informally, you and we agree that any dispute, regardless of when it arose, shall be settled, at your option or ours, by arbitration in accordance with this Agreement. Judgment on the arbitrator's award may be entered in any court having jurisdiction. Except as otherwise expressly provided by applicable law, there is no right of judicial review of any award by the arbitrator.

This agreement is made in consideration of our processing of your inquiry or application for a loan secured by the property identified below ("loan") and is also made in further consideration of our funding of the loan at the interest rate(s) and terms referenced in the loan documents. **This agreement is effective and binding to you and your heirs, successors and assigns and us when both parties sign it.** This agreement shall also apply to any dispute with us[,] our corporate parents, affiliates, subsidiaries, agents, employees, officers, directors, successors and assigns. *If you have any questions, you should consult your own lawyer before you sign this agreement.*

---

**3.** The signatures on the agreement reflect that it was signed on September 11, 2006, but Ms. Daniel testified that she signed the agreement a couple of days later and "backdated" it to September 11, 2006. Mr. Daniels testified that he signed the agreement on September 13, 2006.

\* \* \*

If either party, you are [sic] we, fail to submit to arbitration following a proper demand to do so, that party shall bear all costs and expenses, including reasonable attorney's fees, incurred by the other party compelling arbitration. In all other situations, each party, you and we, shall bear its own costs and expenses, including attorney's fees that party incurs with respect to the arbitration.

\* \* \*

BY SIGNING BELOW YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND THIS AGREE-MENT AND THAT YOU AGREE TO ALL OF ITS TERMS. YOU ALSO ACKNOWLEDGE THAT YOU HAVE RECEIVED A COPY OF THIS AGREEMENT.

| /s/ Francis A. Daniel | | 9-11-06 | |
|---|---|---|---|
| Borrower | Date | Borrower | Date |
| /s/ Eulene Daniel | | 9/11/06 | |
| Borrower | Date | Borrower | Date |

(First emphasis added).

All State did not sign the arbitration agreement. The arbitration agreement also did not include an All State logo, or any other information identifying All State as the other party to the agreement.

When the funds on the loan did not issue three days after the settlement, as the Daniels had been advised, Mr. Daniel contacted his loan officer. The loan officer acknowledged that there was an issue "with the appraisal of the house," but he said that everything was "okay," and that All State would fund the loan. Despite the loan officer's assurances, All State did not disburse any money pursuant to the loan agreement. On October 7, 2006, All State contacted the Daniels in an attempt to change the terms of the loan, which included reducing the loan amount.

On August 31, 2007, the Daniels filed a complaint in the Circuit Court for Montgomery County against All State and

the settlement company. Count I alleged that All State and the settlement company breached the loan agreement when they failed to disburse the loan funds. Count II alleged that All State committed fraud when it failed to fund the loan after representing to the Daniels, before and after execution of the loan agreement, that the loan would be disbursed in accordance with the settlement statement and the August 25, 2006, appraisal of the Daniels' home. Count III alleged that All State engaged in unfair or deceptive trade practices and it violated the Maryland Consumer Protection Act when it presented "one set of loan terms to [the Daniels] while intending another set of terms, made false or misleading oral or written statements to [the Daniels] regarding the status of the loan and the terms of the loan, and failed to state Defendant's true intent regarding the loans, prior to, during, and after the closing." Count IV alleged that All State acted negligently by "proceeding to closing on the loan, and then waiting weeks after the closing to advise Plaintiffs that the loan terms were not acceptable to Defendant" and then attempting to "unilaterally alter the terms of the loan and require the Plaintiffs to accept the new terms or lose the loan entirely." Count V alleged that All State negligently misrepresented the terms of loan when "the terms represented by Defendant were in fact inaccurate, and the closing documents did not accurately represent the actual loan subsequently offered by the Defendant." Count VI alleged, under a theory of promissory estoppel, that All State was liable to the Daniels as a result of its "failure to honor their promise to disburse the loan proceeds." Counts VII, VIII, and IX alleged that All State and the settlement company violated various Maryland statutes in failing to provide required disclosures and in failing to fund the loan.

On October 12, 2007, the settlement company filed a motion to dismiss, arguing that, as a settlement company hired by All State, it could not be held liable for All State's failure to disburse funds. The settlement company argued that it was not a lender or a creditor, it did not enter into a contract with the Daniels, and it did not promise them a loan. The circuit

court granted the motion and dismissed all counts against the settlement company.

On October 16, 2007, All State filed a petition to compel arbitration and award attorney's fees to All State pursuant to the arbitration agreement. The Daniels, in opposition to the petition to compel arbitration, argued that the arbitration agreement could not be enforced based on a lack of mutuality because All State never signed the agreement.

On January 15, 2008, the circuit court held a hearing on the motion. Michael McCandless, President of All State Home Mortgage, testified that All State prepared all the documents that were part of the refinancing agreement between All State and the Daniels. Mr. McCandless testified that All State requires borrowers to sign an arbitration agreement "before we start any work for them on every file." He further testified that the arbitration agreement "is pretty much common in the whole industry. Nobody requires a countersign. There's only two or three pages in the whole couple a hundred page package that require any representative from our company to sign." Although acknowledging that the language in the arbitration agreement was meant to bind both parties, the lender and the borrower, Mr. McCandless took the position that the provision of the agreement requiring that "both parties sign it" referred only to the borrowers. Mr. McCandless further stated that All State uses the same arbitration agreement regardless of whether it contracted with a single borrower or four borrowers. In response to questions challenging his interpretation of the phrase "both parties" when there was only a single borrower or four borrowers, Mr. McCandless' response was: "[i]t's just a boilerplate contract."

Francis Daniel testified that he was informed the week prior to closing that the loan from All State was approved. On September 13, 2006, prior to the closing, Mr. Daniel signed, and subsequently faxed, the signed arbitration agreement to his loan officer. He explained:

[T]he same week we went into closing ... he sen[t] me some other paper. He said, well, he kept on telling me your

loan was approved. And he said before we sign the loan, this [sic] a couple of sheets of paper I need you to sign, you and Eulene, and send it back, so we did. And we signed it, because everything he asked, I wanted the loan, so everything he asked me to sign, and I just did sign it and send it back to him.

Mr. Daniel testified that he "signed most of the loan paper[s] before" he signed the arbitration agreement, and the arbitration agreement was part of the "last set of papers [he] signed before the closing." The loan officer and an employee from the settlement company informed Mr. Daniel that All State would fund the loan three days after the paperwork was completed.

Ms. Daniel testified that she signed the arbitration agreement on the same day as her husband, and they faxed it to their loan officer on September 13, 2006. She testified that the "loan was supposed to be funded" on the 11th and they "were told to sign it the same date." Ms. Daniel testified that she was informed that All State would fund the loan three days after they executed the loan documents.

At the conclusion of the hearing, the circuit court granted All State's motion to compel arbitration:

The fundamental issue [ ] the Court has to resolve is whether or not the document questioned [sic] in its posture would compel arbitration. Obviously, perception of opposing counsel are contrary on this issue. Fundamentally, one has to consider whether or not this document essentially is illusory in its function by referring to past consideration, and the Court has to consider the fact that there is language that said is signed by both parties. And obviously, only one party under the terms of the document signed this, that would be the Daniels, and the financial institution did not, even though the language was there, which prompts the Court to refer to this member of the bench's experience in contract one on the issue of acceptance. What does it mean, and how does one define it?

Almost never does this issue exist in the abstract. You have to look at the environment, the participation, the purpose, and the total language of the document in question. For example, if an offer says, let me know "as soon as possible," how soon is "as soon as possible?" That's a factual determination that has to be made considering all the circumstances. If it says "written response," what does that mean? It can mean any written response. Or if it says, "let me know by letter," would it exclude e-mails and telegrams?

Usually, the Court views contracts, in essence, as documents that both parties essentially wanted to be upheld when they entered into them. This arbitration provision does have language that says signed by the parties. However, in the processing of it, the Daniels were informed and directed by their financial advisor, the facilitator of this mortgage, that it was a sort of routine document, nothing extraordinary about it, to be signed as part of the processing.

Arbitration clearly is preferable in today's environment to extensive litigation, which can be rather expensive. And it usually does not leave either party without a remedy, depending on who's trying to enforce it and how the matter is ultimately resolved.

The Court looks at this document and concludes that, in essence, even though language saying "signed by both parties" is there and the drafter of it is to, as a matter of law, having construed against him, the Daniels, by their signature, can bind the other side. So functionally, it doesn't make any difference, as a practical matter, whether or not the financial institution can be bound, even though it says it will be bound if signed, did not sign it, as in this case, they are bound by it, as counsel indicates.

They could not assert or escape the responsibility of arbitration by saying we didn't sign it. If that were the case, then it would be construed against them, but there's no necessity to view it in that context, since they are bound, have never denied that as a legal reality.

I don't consider the language as raised to be fatal to the enforcement of the arbitration provision. Therefore, the Court is going to grant the defendant's motion to compel arbitration.

On February 26, 2008, the Daniels filed a motion for reconsideration, arguing that the circuit court "made an error of law in its interpretation of the express terms of the alleged arbitration agreement, in holding that the document was a mutually binding agreement...." On March 19, 2008, All State filed a motion in opposition, arguing that the Daniels' motion for reconsideration should be denied. All State contended that Maryland law does not require "a signature ... for a contract to be enforceable," and the parties conduct can "show mutuality or assent to the contract."

On April 7, 2008, the circuit court held a hearing on the motion for reconsideration. The court concluded that the arbitration agreement was not an enforceable contract because All State failed to sign the agreement:

I'm going to grant the relief. And the reason I am doing it is because I reviewed it after I made my initial determination. But the one factor that seemed to be prominent in my thinking was not a lack of consideration, but the question of mutuality, as it related to the arbitration agreement itself. The language is plain. It says it must be signed. And my initial thin[king] was totality of the circumstances. But there's a disconnect between the contract which underlies the arbitration agreement and the arbitration agreement itself. It's a separate agreement, and it has to be treated as a separate agreement, would have to be treated as standing on its own merits.

I think that my determination, initially, was not the proper one, although it was a good one. It was just not the best determination I could make under the circumstances. So out of fairness, on the theory of lack of mutuality, since the agreement was drafted by the financial institution, as a general rule is to be construed against the drafter if there is any confusion. There is no confusion. It was structured

for both parties to sign. Both parties did not sign it. And consequently, I'm going to reverse my determination made initially, and I'm striking that determination and not compelling arbitration.

This timely appeal followed.

### APPEALABILITY

■ Section 12–301(a) of the Courts and Judicial Proceedings Article ("C.J."), Md.Code (2006 Repl.Vol.), authorizes an appeal from a final judgment. The circuit court's order denying All State's motion to compel arbitration is an appealable final judgment.

■ Pursuant to C.J. § 3–207, a party may file à petition with a court to compel arbitration pursuant to an arbitration agreement. A party may file such a petition in two ways. First, a petition to compel arbitration may "be filed as a freestanding action against the party refusing to submit the dispute to arbitration." *NRT Mid–Atlantic, Inc. v. Innovative Properties, Inc.*, 144 Md.App. 263, 277, 797 A.2d 824 (2002). *Accord Essex Corp. v. Susan Katharine Tate Burrowbridge, LLC*, 178 Md.App. 17, 29–30, 940 A.2d 199 (2008). If the petition to compel arbitration is filed as a separate action:

> [A] court's order deciding such an action disposes of the action in its entirety, regardless of whether the order grants or denies the petition. Once the court orders arbitration, or denies it, there is nothing left for it to do. Accordingly, the court's order is a final judgment under CJ section 12–301.

*NRT Mid–Atlantic*, 144 Md.App. at 277, 797 A.2d 824.

Second, a petition to compel arbitration may be filed, as it was here, in the pending action between the parties. *Id.* at 278, 797 A.2d 824. Such a petition, although filed in the pending action, involves "a separate claim, concerning the proper forum for resolution of the parties' dispute." *Id.* This Court has "concluded that the strong legislative policy favoring enforcement of arbitration agreements also 'favors treating as final an order denying a petition to compel arbitration'

filed in a pending case." *Commonwealth Equity Servs. v. Messick*, 152 Md.App. 381, 393, 831 A.2d 1144 (quoting *NRT Mid-Atlantic*, 144 Md.App. at 279, 797 A.2d 824), *cert. denied*, 378 Md. 614, 837 A.2d 926 (2003). A court's order denying a petition to compel arbitration resolves the claim in its entirety "making that order susceptible to certification by the circuit court as a final judgment under Maryland Rule 2–602(b)." *Id.* at 392, 831 A.2d 1144.[1]

Here, the circuit court certified its order denying the petition to compel arbitration as a final judgment, pursuant to Maryland Rule 2–602(b)(*l* ). Accordingly, the denial of the petition is an appealable final judgment.

## DISCUSSION

▆▆▆ All State argues that the circuit court erred in finding that there was not an enforceable arbitration agreement because All State failed to sign the agreement. All State contends that a signature is not "always necessary to the execution of a written contract," that acceptance can be accomplished by acts, and that All State "clearly adopted the Agreement by its actions." It further argues that, even if the contract is construed as requiring the signature of both parties as a condition to its enforcement, the condition was met here because the term "both parties" refers to the two borrowers, who signed the contract.[5]

---

**4.** Maryland Rule 2–602(b) provides:

> (b) **When allowed.** If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment: (1) as to one or more but fewer than all of the claims or parties. . . .

**5.** In its reply brief, All State argued, for the first time, that a non-signatory can enforce an arbitration provision under the doctrine of equitable estoppel. Appellee filed a motion to strike the reply brief, asserting that the issue of equitable estoppel was not raised in All State's initial brief, and it was improper to raise it in a reply brief. We agree. *See Robinson v. State*, 404 Md. 208, 216 n. 3, 946 A.2d 456 (2008) (declining to address an issue because an "[a]n appellate court will not ordinarily consider an issue raised for the first time in a reply brief"); *Strauss v. Strauss*, 101 Md.App. 490, 509 n. 4, 647 A.2d 818

The Daniels argue that the circuit court's order should be affirmed. Although they agree that some contracts may be enforced without the signature of all parties to the contract, they argue that *"signatures are required when the parties to the agreement expressly make them necessary to formalize the contract and show their mutual assent."* The Daniels contend that here, where the arbitration agreement expressly required that both parties had to sign the agreement, and where All State did not sign the agreement, there was no enforceable contract requiring arbitration. With respect to All State's claim that the term "both parties" refers to the borrowers, the Daniels characterize this claim as "extraordinary" and "untenable," and they state that it ignores the requirement that there be two parties to every contract.

■ "The issue of whether an agreement to arbitrate exists is governed by contract principles." *Holloman v. Circuit City Stores, Inc.,* 391 Md. 580, 590, 894 A.2d 547 (2006). *Accord NRT,* 144 Md.App. at 279, 797 A.2d 824 ("Whether there is an agreement to arbitrate the parties' dispute is a legal question of contract interpretation."). The interpretation of a written contract, including whether a dispute is subject to arbitration, is a question of law, which is reviewed *de novo. Walther v. Sovereign Bank,* 386 Md. 412, 422, 872 A.2d 735 (2005).

■ In construing a contract, " 'Maryland adheres to the principle of the objective interpretation of contracts.' " *Anderson Adventures, LLC v. Sam & Murphy, Inc.,* 176 Md.App. 164, 178, 932 A.2d 1186 (2007) (quoting *Cochran v.*

---

(1994) ("[T]he scope of a reply brief is limited to the points raised in appellee's brief, which, in turn, address the issues originally raised by appellant. A reply brief cannot be used as a tool to inject new arguments.") (citations omitted), *cert. denied,* 337 Md. 90, 651 A.2d 855 (1995). The motion to strike the portion of the reply brief arguing equitable estoppel will be granted. We also will grant the motion to strike a "hold harmless letter" that All State included in the appendix to its reply brief, which was not part of the record below. *See Kemp–Pontiac–Cadillac, Inc. v. S & M Constr. Co.,* 33 Md.App. 516, 524, 365 A.2d 1021 (1976) ("The parties are not permitted to supplement the record by inserting any other matter into their record extract.").

*Norkunas,* 398 Md. 1, 16, 919 A.2d 700 (2007)). "If a contract is unambiguous, the court must give effect to its plain meaning and not contemplate what the parties may have subjectively intended by certain terms at the time of formation." *Nova Research, Inc. v. Penske Truck Leasing Co., L.P.,* 405 Md. 435, 448, 952 A.2d 275 (2008). *Accord Clancy v. King,* 405 Md. 541, 557, 954 A.2d 1092 (2008). "[T]he 'court must presume that the parties meant what they expressed.' " *Anderson,* 176 Md.App. at 178, 932 A.2d 1186 (quoting *United Servs. Auto. Ass'n v. Riley,* 393 Md. 55, 80, 899 A.2d 819 (2006)).

Thus, we turn to the language of the agreement here. The agreement provided: "This agreement is effective and binding to you and your heirs, successors and assigns and us when both parties sign it." The circuit court found that this language was unambiguous: "The language is plain. It says it must be signed . . . There is no confusion. It was structured for both parties to sign. Both parties did not sign it." Accordingly, the court found that there was not an enforceable contract, and it denied the motion to compel arbitration.

All State argues that the circuit court erred in finding that there was not an enforceable contract because a signature is not "always necessary to the execution of a written contract." With respect to its general recitation of the law, All State is correct. That general law, however, is not applicable to the facts of this case.

Ordinarily, " 'a signature is not required in order to bring a contract into existence, *nor is a signature always necessary to the execution of a written contract.'* " *Stern v. Bd. of Regents,* 380 Md. 691, 731, 846 A.2d 996 (2004) (quoting *Porter v. Gen. Boiler Casing Co.,* 284 Md. 402, 410, 396 A.2d 1090 (1979)). There is an exception to this rule, however, when the terms of the contract make the parties' signatures a condition precedent to the formation of the contract. *See Porter,* 284 Md. at 410–11, 396 A.2d 1090 ("[T]he making of a valid contract requires . . . no signatures unless the parties have made them necessary at the time they expressed their

assent and as a condition modifying that assent.") (quoting 1 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 31, at 114 (1963)).

A condition precedent in a contract is "a fact, other than mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises." *Chirichella v. Erwin*, 270 Md. 178, 182, 310 A.2d 555 (1973) (citation omitted). " '[W]here a contractual duty is subject to a condition precedent, whether express or implied, there is no duty of performance and there can be no breach by non-performance until the condition precedent is either performed or excused.' " *Pradhan v. Maisel*, 26 Md. App. 671, 677, 338 A.2d 905 (quoting *Laurel Race Course, Inc. v. Regal Constr. Co., Inc.*, 274 Md. 142, 154, 333 A.2d 319(1975)), *cert. denied* 276 Md. 748 (1975).

In *Pradhan*, although the signature of the parties was not listed as a condition in the contract itself, the evidence established that the signature of a corporate officer was a condition precedent to the formation of a contract. *Id.* at 677–78, 338 A.2d 905. Under these circumstances, and where no officer ever signed the contract, this Court held that no enforceable contract existed. *Id.*

The existence of a condition precedent in a contract can be determined by the terms of the contract:

The question whether a stipulation in a contract constitutes a condition precedent is one of construction dependent on the intent of the parties to be gathered from the words they have employed and, in case of ambiguity, after resort to the other permissible aids to interpretation[.] Although no particular form of words is necessary in order to create an express condition, such words and phrases as "if" and "provided that," are commonly used to indicate that performance has expressly been made conditional, as have the words **"when,"** "after," "as soon as," or "subject to[.]"

*Aronson & Co. v. Fetridge*, 181 Md.App. 650, 682, 957 A.2d 125 (quoting *Chirichella*, 270 Md. at 182, 310 A.2d 555), *cert. granted*, 406 Md. 743, 962 A.2d 370 (2008) (emphasis added).

Here, the contract provided that "[t]his agreement is effective and binding ... **when** both parties sign it." (Emphasis added). This language in the contract provided, as a condition precedent to an effective agreement, that both parties sign the agreement. In the absence of both signatures, no enforceable contract existed.

*Premiere Chevrolet v. Headrick,* 748 So.2d 891 (Ala.1999), is similar to the facts of this case. In that case, Headrick signed an agreement to lease an automobile from Premiere Chevrolet, and he signed a "buyer's order" with an arbitration clause that provided: (1) "this order is not valid unless signed and accepted by Premiere Chevrolet, Inc." and (2) "this order shall not become binding until accepted by the dealer or his authorized representative." *Id.* at 893. Premiere's representative signed the lease agreement, but not the buyer's order. *Id.* at 892. Headrick subsequently filed suit against Premiere, alleging fraud and breach of contract, and Premiere moved to compel arbitration. *Id.* at 893. Similar to the facts here, the trial court initially granted the dealership's motion, but, after Headrick's motion for reconsideration, it "set aside the order compelling arbitration." *Id.*

On appeal, the parties made arguments similar to the arguments made here. Premiere argued that Headrick "should be compelled to arbitrate her claims in accordance with the buyer's order which she signed...." *Id.* Headrick argued "that, because the buyer's order was never signed by any agent of Premiere and thus was never fully executed, no agreement to arbitrate ever came into existence." *Id.*

The Supreme Court of Alabama affirmed the trial court's order denying the motion to compel arbitration. *Id.* at 896. The court stated that the language of the buyer's order, that "this order is not valid unless signed and accepted by Premiere Chevrolet, Inc.," required Premiere's signature "to make a contract of the document." *Id.* at 894. The Supreme Court concluded that, because "[n]o signature for Premiere or its agent appear[ed] anywhere on the buyer's order," "the trial judge was correct in ruling that there was no enforceable

agreement to arbitrate." *Id.* at 894; *id.* at 897 ("Premiere's signature on the buyer's order was an express condition precedent to the existence of a contract.") (See, J., concurring).

Other courts similarly have concluded that a contract, which expressly provides that the contract is valid when the parties sign the agreement, is unenforceable until each party signs the contract. In *Los Angeles Rams Football Club v. Cannon,* 185 F.Supp. 717, 719 (S.D.Cal.1960), a college football player signed a contract with a professional football team before his last college game. When another team offered a better deal, he tried to get out of the other contract. *Id.* at 720. The contract contained the following provision: "This agreement shall become valid and binding upon each party hereto only when, as and if it shall be approved by the Commissioner." *Id.* at 721. In determining that the Commissioner's failure to sign the agreement rendered the contract unenforceable, the court held that the language was "too definite to be ignored. It jumps out at you. The words employed are too strong to permit of ambiguity." *Id.* at 722. *Accord Roth v. Garcia Marquez,* 942 F.2d 617, 626 (9th Cir.1991) (where agreement provided that option to purchase film rights "shall commence upon signature" of party, "signature was a condition precedent to the forming of a binding contract," and, because party did not sign agreement, there was no binding contract); *O'Daniel Motors, Inc. v. Handy,* 390 S.W.2d 453, 453 (Ky.Ct.App.1965) (contract signed by buyer, with provision that the order was not binding until accepted by the dealer, was "not binding until accepted by [the car dealer] in accordance with its terms.").

▋ Here, the arbitration agreement unequivocally stated that the agreement became "effective and binding ... when both parties sign it." This language created a condition precedent to the contract's formation. In the absence of the required signature, there was no binding contract.[6]

---

**6.** As previously noted, when a contractual duty is subject to a condition precedent, there is no duty of performance " 'until the condition prece-

 All State next contends that, even if the language requiring both parties to sign the agreement was a condition precedent, the condition was satisfied because the Daniels signed the agreement and the term "both parties" refers "to the borrowers whether single or multiple as no signature line existed for" All State. This contention is meritless for at least two reasons.

First, counsel for All State advised at oral argument that the agreement is a form arbitration agreement used in every case. To construe the term "both parties" to refer solely to the borrowers would make no sense, because sometimes there is only one borrower, or there are more than two borrowers.

Second, the other portions of the arbitration agreement make clear that the term "both parties" refers to the borrowers as one party and All State as the other party. The first line of the arbitration agreement identifies two parties to the contract, the lender, "( [ ]We, our or us)," and the borrower, "the persons named below ('you')." After setting forth that disputes will be resolved by arbitration, the agreement provides:

> **If either party, you are [sic] we,** fail to submit to arbitration following a proper demand to do so, **that party shall bear all costs and expenses,** including reasonable attorney's fees, **incurred by the other party compelling arbitration.** In all other situations, **each party, you and we,** shall bear its own costs and expenses, including attorney's fees that party incurs with respect to the arbitration.

---

dent is either performed or excused.'" *Pradhan v. Maisel,* 26 Md.App. 671, 677, 338 A.2d 905 (quoting *Laurel Race Course, Inc. v. Regal Constr. Co., Inc.,* 274 Md. 142, 154, 333 A.2d 319 (1975)), *cert. denied* 276 Md. 748 (1975). A party to a contract "'may waive a condition precedent,'" and in that case "'the contract remains enforceable despite the nonoccurrence of the condition.'" *Cattail Assocs., Inc. v. Sass,* 170 Md.App. 474, 499, 907 A.2d 828 (2006) (quoting 13 Richard A. Lord, Williston on Contracts § 39:17 (4th ed. 2000)). All State did not argue below, or on appeal, that the Daniels waived the condition precedent that both parties sign the agreement.

(Emphasis added). By the plain terms of the contract, the term "both parties" refers to the lender, All State, as one party, and the borrower(s) as the other party.

Under the express terms of the arbitration agreement that All State drafted, the agreement was to become effective and binding "when both parties sign it." Because All State did not sign the agreement, there was no binding arbitration agreement. Accordingly, the circuit court properly denied All State's motion to compel arbitration.

**MOTION TO STRIKE PORTION OF REPLY BRIEF GRANTED. JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**