UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-2001

MEDICINE SHOPPE INTERNATIONAL, INCORPORATED,

             Plaintiff - Appellant,

     v.

MOHAMMED A. SIDDIQUI; LOCH RAVEN PHARMACY INCORPORATED;
BELVEDERE ENTERPRISES INCORPORATED,

             Defendants - Appellees.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.    James K. Bredar, District Judge.
(1:10-cv-01023-JKB)

Argued:  September 19, 2013          Decided:  November 5, 2013

Before DUNCAN and THACKER, Circuit Judges, and Gina M. GROH,
United States District Judge for the Northern District of West
Virginia, sitting by designation.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED:** Stephen Jerome O'Brien, DENTONS US LLP, St. Louis,
Missouri, for Appellant.   David Michael Silbiger, SILBIGER &
SILBIGER, Baltimore, Maryland, for Appellees. **ON BRIEF:** David
I. Ackerman, DENTONS US LLP, Washington, D.C., for Appellant.
Mark R. Millstein, Baltimore, Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Medicine Shoppe International, Inc. ("MSI") appeals the district court's order granting summary judgment in favor of Appellees finding that the parties entered into a binding and effective settlement agreement that disposed of the case. For the following reasons, we vacate and remand.


I.

MSI is a national franchisor that grants licenses to franchisees to operate prescription pharmacies known as the "Medicine Shoppe System." In exchange for the franchise, MSI receives license fees from its licensees based on a percentage of each pharmacy's monthly gross receipts. Appellees, Mohammed A. Siddiqui, Loch Raven Pharmacy Inc., and Belvedere Enterprises Inc., purchased two Medicine Shoppe Pharmacies from a former franchisee, Anwar Yousuf and his corporations, Drugsmart, Inc. ("Drugsmart") and Drugsmart Enterprises, Inc. ("Drugsmart Enterprises"). Yousuf and Noreen Anwar were the only shareholders of Drugsmart and Drugsmart Enterprises.

On February 25, 2001, Drugsmart and MSI entered into a licensing agreement. Drugsmart agreed to operate a Medicine Shoppe Pharmacy located at 6307 York Road in Baltimore, Maryland. On May 20, 2003, Drugsmart and MSI entered into a second licensing agreement, and Drugsmart agreed to operate a

2

second Medicine Shoppe Pharmacy located at 1724 E. Northern Parkway in Baltimore, Maryland. In exchange for the licenses to operate the pharmacies, MSI obtained a security interest in Drugsmart's prescription files.

On or about May 2004, Yousuf incorporated Drugsmart Enterprises. Drugsmart Enterprises began operating the Parkway Medicine Shoppe, and on October 14, 2004, MSI entered into a security agreement with Drugsmart Enterprises. Under the security agreement, MSI extended Drugsmart Enterprises a $160,000 line of credit. In exchange, MSI received a security interest in the Parkway Medicine Shoppe's equipment, fixtures, inventory, accounts receivable, prescription files, customer lists, and goodwill.

By March 1, 2010, the two pharmacies owed a substantial sum of money to MSI. MSI terminated the franchise agreements and gave the franchisees until March 31, 2010 to satisfy their outstanding obligations, de-identify, and close the stores. On March 30, 2010, Yousuf notified MSI that he intended to transfer the pharmacies to Siddiqui. Then, Yousuf transferred the pharmacies to Siddiqui without MSI's permission, and Siddiqui and his two corporations, Loch Raven Pharmacy and Belvedere Enterprises, began operating the pharmacies. Despite the transfer of the pharmacies, Yousuf continued to work as Siddiqui's employee.

3

In April 2010, as a result of these events, MSI filed this lawsuit against Siddiqui. In November 2010, MSI filed an amended complaint adding as defendants the corporations controlled by Siddiqui, Loch Raven Pharmacy and Belvedere Enterprises. In an effort to resolve the litigation, the parties drafted a Settlement and Release Agreement ("Settlement Agreement"). The Settlement Agreement provided, in part, that Siddiqui and the corporations agreed "to convert the Pharmacies to Medicap Pharmacies, Inc. ("MPI") franchises and to execute a Medicap Pharmacy Franchise Agreement for each of the Pharmacies," with each agreement lasting for three years. J.A. 410.

The Settlement Agreement contained two provisions with certain condition precedent language. First, Paragraph 4.C of the Settlement Agreement provided:

> [u]pon execution of this Agreement and all necessary documents to effectuate conversion of the Pharmacies to MPI franchisees, MSI, its affiliates, successors and/or assigns will release, discharge and hold Siddiqui and the Companies, their affiliates, successors and/or assigns, harmless from each and every claim relating to the Dispute, whether known or unknown, that MSI may have against Siddiqui and the Companies as of the Effective Date.

J.A. 411. Second, Paragraph 4.E stated, "[u]pon receipt of the executed franchise documents discussed above, MSI agrees to cause its claims within the Litigation to be dismissed with prejudice[.]" Id.

4

On or about June 17, 2011, Siddiqui signed the Settlement Agreement for himself and the corporations. On July 5, 2011, MSI signed the Settlement Agreement. However, after the execution of the Settlement Agreement, Siddiqui failed to sign the franchise documents, personal guaranties, documents relating to purchasing inventory from Cardinal Health, Inc., and other related documents.

On July 7, 2011, Siddiqui and Yousuf entered into two bills of sale purportedly transferring Siddiqui's one hundred percent interest in the two corporations to Yousuf. Each bill of sale provided that:

> [t]he Buyer expressly understands and acknowledges that the liabilities associated with the said corporation[s] . . . including the personal guarantees provided by the Seller on such liabilities shall be discharged fully and completely by the buyer prior to the execution of this Bill of Sale.

J.A. 414-421. Yousuf did not discharge all liabilities fully and completely prior to the execution of each bill of sale. Additionally, MSI had no knowledge of these transactions.

On July 21, 2011, Appellees' counsel informed MSI's counsel that Siddiqui had died. On July 26, 2011, Appellees' counsel e-mailed and faxed to MSI the signature pages of some of the franchise documents and personal guaranties. Yousuf had executed the documents on behalf of Loch Raven Pharmacy and Belvedere Enterprises as "President" of the corporations.

5

On July 27, 2011, the parties filed a Joint Status Report with the district court. The parties reported that Siddiqui "died sometime after signing a settlement agreement but before executing other documents necessary to carry out the terms of the settlement. The parties now disagree over the status of this matter." J.A. 389. In light of the joint status report, the district court ordered the parties to conduct discovery regarding two issues: (1) the ownership of the corporations and the assets of Siddiqui's estate and (2) the enforceability of the Settlement Agreement signed by Siddiqui shortly before his death.

On October 13, 2011, the district court held a status hearing and subsequently referred the matter to a United States Magistrate Judge to conduct a settlement conference. The parties' negotiations with the magistrate judge were unsuccessful in resolving the case. Therefore, on April 18, 2012, the district court ordered the parties to submit briefs on whether or not the executed Settlement Agreement resolved the case and set a hearing in the matter.

On May 29, 2012, the district court held a hearing addressing the question of whether a settlement existed in the case. At this hearing, the court held the Settlement Agreement resulted in a full and effective settlement that resolved the dispute. Subsequently, in a two-page order, the district court

6

found the Settlement Agreement to be valid and enforceable. Specifically, the district court found that the Settlement Agreement was binding and effective because it was duly executed, "evince[d] a meeting of the minds and mutual consent among parties with capacity," and had consideration on both sides. J.A. 674. Then, the district court ordered the parties to submit simultaneous briefs in ten days on whether judgment should be entered dismissing the litigation.

After reviewing the briefs, the district court entered a one-page order dismissing Appellant's claims in favor of the Appellees' Motion for Summary Judgment. J.A. 676. In its memorandum, the court concluded "the settlement agreement end[ed] the reason for this litigation." J.A. 672.

MSI now appeals, arguing that the district court erred by granting summary judgment because material issues of fact exist.

II.

We review a district court's order granting summary judgment de novo. Washington Metro. Area. Transit Auth. v. Potomac Inv. Props., Inc., 476 F.3d 231, 234 (4th Cir. 2007). "Summary judgment is appropriate only if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, 'no material facts are disputed and the moving party is entitled to judgment as a

7

matter of law.'" Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (quoting Ausherman v. Bank of Am. Corp., 352 F.3d 896, 899 (4th Cir. 2003)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

We apply the substantive law of Maryland because jurisdiction in this case is based on diversity jurisdiction. Moore Bros. Co. v. Brown & Root, Inc., 207 F.3d 717, 722 (4th Cir. 2000). Maryland law provides that "[s]ettlement agreements are enforceable as independent contracts, subject to the same general rules of construction that apply to other contracts." Maslow v. Vanguri, 896 A.2d 408, 419 (Md. Ct. Spec. App. 2006). When construing a contract, Maryland courts apply the principle of objective interpretation of contracts. Anderson Adventures, LLC v. Sam & Murphy, Inc., 932 A.2d 1186, 1194 (Md. Ct. Spec. App. 2007); Cochran v. Norkunas, 919 A.2d 700, 709 (Md. 2007). "If a contract is unambiguous, the court must give effect to its plain meaning and not contemplate what the parties may have subjectively intended by certain terms at the time of formation." Nova Research, Inc. v. Penske Truck Leasing Co., L.P., 952 A.2d 275, 282 (Md. 2008). "[A] court must presume that the parties meant what they expressed." United Servs. Auto.

8

Ass'n v. Riley, 899 A.2d 819, 834 (Md. 2006)(internal quotation marks omitted). However, Maryland courts consider contractual language ambiguous "when [the language] read by a reasonably prudent person, [] is susceptible of more than one meaning." B&P Enters. v. Overland Equip. Co., 758 A.2d 1026, 1037 (Md. Ct. Spec. App. 2000) (quoting Calomiris v. Woods, 727 A.2d 358 (Md. 2000)). If a court finds the language is ambiguous, then a court may permit extrinsic evidence to determine the parties' intent. B&P Enters., 758 A.2d at 1037. (citations omitted).

Although state law governs settlement agreements, federal courts have the "inherent equitable power summarily to enforce a settlement agreement when the practical effect is merely to enter a judgment by consent." Millner v. Norfolk & W.R. Co., 643 F.2d 1005, 1009 (4th Cir. 1981). However, if the parties dispute the existence or validity of a settlement agreement, the court must hold a plenary evidentiary hearing to resolve the dispute. Id.

In MSI's briefs and at oral argument, MSI argues that genuine issues of material fact exist regarding the enforcement of the Settlement Agreement and that Appellees materially breached the terms of the Settlement Agreement. Because we conclude that genuine issues of material fact exist, the district court erred by granting summary judgment.

In this case, the district court held a plenary evidentiary hearing. At the hearing, the district court found that a settlement agreement existed, but made no factual findings resolving the material dispute of facts between the parties. Because we find that genuine issues of material fact exist, the district court improperly granted summary judgment to summarily enforce the Settlement Agreement. See Millner, 643 F.2d at 1009-10 (holding summary enforcement of the settlement agreement was improper where an evidentiary hearing was required to resolve factual disputes).

MSI primarily argues that Paragraph 4.C of the Settlement Agreement constitutes a condition precedent that was not met by Siddiqui and the corporations. Paragraph 4.C of the Settlement Agreement provides:

> [u]pon execution of this Agreement and all necessary documents to effectuate conversion of the Pharmacies to MPI franchisees, MSI . . . will release, discharge and hold Siddiqui and the Companies . . . harmless from each and every claim relating to the Dispute, whether known or unknown, that MSI may have against Siddiqui and the Companies as of the Effective Date.

J.A. 411 (emphasis added). Also, Paragraph 4.E states, "[u]pon receipt of the executed franchise documents discussed above, MSI agrees to cause its claims within the Litigation to be dismissed with prejudice[.]" Id.

A condition precedent in a contract is "a fact, other than mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises." Chirichella v. Erwin, 310 A.2d 555, 557 (Md. 1973) (finding no condition precedent created when the clause in the contract simply stated that the real estate closing would "[c]oincide with settlement of New Home in Kettering Approx. Oct. '71,'" and "merely fixe[d] a convenient and appropriate time for settlement").

In reviewing a contract, if a Maryland court finds a "'contractual duty is subject to a condition precedent, whether express or implied, there is no duty of performance and there can be no breach by non-performance until the condition precedent is either performed or excused.'" All State Home Mortg., Inc. v. Daniel, 977 A.2d 438, 447 (Md. Ct. Spec. App. 2009) (quoting Pradham v. Maisel, 338 A.2d 905, 909 (Md. Ct. Spec. App. 1975)). To determine whether a condition precedent exists, Maryland courts look to the terms of the contract:

> whether a stipulation in a contract constitutes a condition precedent is [a question] of construction dependent on the intent of the parties to be gathered from the words they have employed and, in case of ambiguity, after resort to the other permissible aids to interpretation[.]

Id. at 448 (quoting Aronson & Co v. Fetridge, 957 A.2d 125, 144 (Md. Ct. Spec. App. 2008)).

11

A genuine issue of material fact exists regarding whether certain conditions precedent were satisfied. First, MSI argues that its release and discharge of liability as to Siddiqui and his corporations would trigger only upon execution of all necessary documents, which Appellees never signed. However, Appellees contend that the condition was satisfied because they properly executed the franchise agreement, which was the only necessary document for conversion. Appellees rely upon Paragraph 4.E of the Settlement Agreement, which provides "[u]pon receipt of the executed franchise documents discussed above, MSI agrees to cause its claims within the Litigation to be dismissed with prejudice[.]" Id. (emphasis added).

Therefore, a genuine issue of material fact exists regarding which documents constitute "all necessary documents to effectuate conversion of the Pharmacies to MPI Franchisees" or "executed franchise documents" triggering MSI's dismissal of its claims because the parties dispute which documents must be signed to effectuate conversion. See J.A. 411 (emphasis added). MSI contends that "all necessary documents" includes an amendment to the franchise agreement providing for a three-year term, a state-specific addenda, and documents related to the purchase of inventory from Cardinal Health, Inc. However, Appellees argue that "all necessary documents" is simply the

12

franchise agreement. This factual dispute must be resolved prior to summary enforcement of the Settlement Agreement.

Second, a factual dispute exists regarding whether conditions precedent were satisfied because it is unclear whether Yousuf had authority to sign franchise-related documents on behalf of the corporations. MSI argues the bills of sale between Siddiqui and Yousuf may be invalid. Each bill of sale provides that the buyer "expressly understands and acknowledges" that it must "fully and completely discharge the liabilities associated with the corporations, including the seller's personal guarantees" prior to the execution of the bill of sale. J.A. 414-15, 418-19. Otherwise, the bill of sale becomes null and void.

It is uncontested that Yousuf did not fully and completely discharge the liabilities associated with the corporations prior to the execution of each bill of sale. Maryland law provides that, "[i]f a contract is unambiguous, the court must give effect to its plain meaning and not contemplate what the parties may have subjectively intended by certain terms at the time of formation." Nova Research, Inc., 952 A.2d at 283. "[A] court must presume that the parties meant what they expressed." Riley, 899 A.2d at 833 (internal quotation marks omitted). However, the Appellees contend that the language in each bill of sale was a mutual mistake. Because the district court made no finding on

13

this issue, a genuine issue of material fact exists. For example, if the bills of sale are determined null and void, all the shares of the common stock of the corporations reverted to Siddiqui and Yousuf had no authority to bind the corporations when he executed the franchise agreements. Therefore, it is unclear who owns the corporations much less who has the authority to sign franchise and other related documents on behalf of the corporations.

Accordingly, in light of these circumstances, there are genuine issues of material fact that preclude summary judgment.

IV.

For the foregoing reasons, we vacate the district court's order granting summary judgment and remand for further proceedings consistent with this opinion.

<u>VACATED AND REMANDED</u>

14